EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ex- Agte José L. Torres Rivera<br><br>Peticionario<br><br>v.<br><br>Policía de Puerto Rico<br><br>Recurrida | 2016 TSPR 224<br><br>196 DPR ____ |

Número del Caso: CC-2014-0445

Fecha: 24 de octubre de 2016

Abogado de la Parte Peticionaria:

      Lcda. José F. Avilés Lamberty

Abogados de la Parte Recurrida:

      Lcda. Margarita Mercado Echegaray
      Lcdo. Miriam Álvarez Archilla
      Lcda. Aida E. De la Rosa Abreu


Materia: Derecho Administrativo: Facultad del Superintendente de la Policía de imponer como medida disciplinaria una sanción mayor a la que se había notificado al empleado.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex-Agte. José L. Torres
Rivera

    Peticionario

       v.                 CC-2014-445     Certiorari

Policía de Puerto Rico

    Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 24 de octubre de 2016.

¿Puede el Superintendente de la Policía de Puerto Rico, luego de celebrar una vista administrativa informal, imponer como medida disciplinaria contra un agente policíaco una sanción mayor a la que le había notificado previamente? Contestamos esa interrogante en la negativa.

Por los fundamentos que discutiremos más adelante, modificamos la Sentencia recurrida a los fines de devolver el caso a la Comisión de Investigación, Procesamiento y Apelación (CIPA) para que celebre una vista adjudicativa formal en el caso del señor José L. Torres Rivera (señor Torres Rivera o peticionario) y,

de entender que procede una medida disciplinaria, se circunscriba a imponer una medida que no podrá exceder de una suspensión de empleo y sueldo por el término de 120 días.

## I

Allá para el 2003, el señor Torres Rivera se desempeñaba en un puesto de carrera como agente de la Policía de Puerto Rico (Policía). A raíz de unos hechos ocurridos el 26 de junio de 2003 en el Centro Médico en Río Piedras, la Policía realizó una investigación administrativa sobre la conducta del peticionario como miembro de la fuerza policíaca.[1] Como resultado de esa

---

[1] De la *Resolución de cargos* notificada en octubre de 2010 al peticionario, el Sr. José L. Torres Rivera, surge la siguiente narrativa de hechos:

Surge de la investigación que el 26 de junio de 2003, el Sr. Alexander Monge Adorno fue a buscar a su esposa al trabajo en Centro Médico. El Sr. Monge estaba mal estacionado y fue intervenido por la persona encargada de la grúa, con quien discutió y fue agredido por este. El Sr. Monge lo empujó y con la mano abierta agredió al de la grúa en el área de la boca. Inmediatamente llegan varias personas de la seguridad de Centro Médico, quienes los agredieron con sus rotenes.

Usted, quien estaba prestando vigilancia, interviene en la situación. Los agentes de la seguridad del Centro Médico arrestan al Sr. Monge por agresión. No obstante, estando este esposado y en su presencia, fue agredido por los guardias de seguridad con los rotenes. Usted no impidió esta actuación, permitiendo violencia injustificada en contra de un ciudadano que está indefenso, por estar arrestado y esposado. Tampoco dio instrucciones para que el Sr. Monge fuera atendido por personal médico, luego de la golpiza.

Hay que destacar que el Sr. Monge sufrió contusiones en la espalda y fractura de un brazo por esta agresión. El caso fue sometido al Tribunal y los agentes de seguridad resultaron convictos de agresión. Cabe señalar además, que el Sr. Monge no estaba armado.

Surge de la investigación que usted declaró a favor de los guardias de seguridad, parcializándose a favor de éstos. Por todos estos actos usted fue negligente, permitiendo que se le

investigación, el entonces Superintendente de la Policía, el Lcdo. José E. Figueroa Sancha, le notificó al señor Torres Rivera una *Resolución de cargos* el 28 de octubre de 2010. En particular, expuso que el señor Torres Rivera incurrió en las faltas graves 1, 18, 27 y 42 dispuestas en el Art. 14, Sec. 14.5 del Reglamento de Personal de la Policía de Puerto Rico (Reglamento de Personal),[2] por lo que se proponía "imponerle como castigo una suspensión de empleo y sueldo por el término de ciento veinte (120) días".[3] (Énfasis suplido).

Como parte de la notificación, el Superintendente Figueroa Sancha le advirtió al señor Torres Rivera de su derecho a solicitar una vista administrativa informal ante un Oficial Examinador dentro del término de 15 días laborables, contado a partir de la fecha de notificación

---

violaran los derechos civiles a un ciudadano, que estaba arrestado y esposado.
Véase *Resolución de cargos,* Apéndice de la Solicitud de *certiorari*, págs. 32-33.

[2] Estas faltas graves son:

1. Demostrar incapacidad manifiesta, ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades.

18. Declarar falsamente o inducir a declarar falsamente a otra persona ante un magistrado, oficial investigador, organismo judicial o cuasijudicial.

27. Observar una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía.

42. Ofrecerse a declarar como testigo de reputación ante los tribunales de justicia u organismos administrativos, en casos de personas sometidas a los procedimientos judiciales o cuasijudiciales.
Art. 14, Sec. 14.5 del Reglamento de Personal de la Policía de Puerto Rico.

[3] *Resolución de cargos*, Apéndice de la Solicitud de *certiorari*, pág. 33.

de la *Resolución de cargos*. A su vez, le informó que "[d]e no solicitar la vista se entenderá que renuncia a la misma y a su derecho de estar presente y presentar evidencia a su favor, por lo que el castigo de suspensión se convertirá en final, con derecho usted de apelar el mismo ante la [CIPA] dentro del término de treinta (30) días calendario, contados a partir de la Resolución Final que se emita imponiéndole el referido castigo".[4] (Énfasis suplido).

Luego de celebrada la vista administrativa informal, según solicitada por el peticionario, un nuevo Superintendente de la Policía, Héctor M. Pesquera, notificó al señor Torres Rivera una *Resolución final de expulsión* el 24 de octubre de 2013 y le indicó que podía apelarla ante la CIPA. Específicamente, el Superintendente Pesquera le informó lo siguiente:

> Luego de evaluar el expediente administrativo, he determinado que la sanción anunciada en la Resolución de Cargos debe ser modificada. En vista de que su conducta es un claro atropello a los derechos civiles de un ciudadano y al amparo del acuerdo suscrito entre el Gobierno del Estado Libre Asociado de Puerto Rico, la Policía de Puerto Rico y el Gobierno de los Estados Unidos de América para la reforma de la Policía de Puerto Rico, en el caso United States v. Commonwealth of Puerto Rico et al., Caso Número 3:12-cv-2039 (GAG), lo expulso del puesto que ocupa en la Policía de Puerto Rico, efectivo a la fecha de notificación de esta comunicación.[5] (Énfasis suplido).

---

[4] *Resolución de cargos*, Apéndice de la Solicitud de *certiorari*, pág. 33.

[5] *Resolución final de expulsión*, Apéndice de la Solicitud de *certiorari*, pág. 35.

En desacuerdo con la decisión de la Policía, el 12 de noviembre de 2013 el señor Torres Rivera apeló ante la CIPA. Así las cosas, dicho foro dictó una Resolución el 20 de noviembre de 2013,[6] en la cual declaró "con lugar" la apelación del señor Torres Rivera al concluir que "el proceso disciplinario […] fue uno defectuoso, contra derecho y en violación al debido proceso de ley".[7] En su dictamen, la CIPA expresó que "[s]i validamos el proceder de la Policía de Puerto Rico adjudicándole la autoridad de variar los castigos sin previo aviso, estaríamos colocando a los policías en una posición desventajosa frente a la institución que precisamente le ha privado de su derecho propietario".[8] Asimismo, fundamentó su decisión en lo siguiente:

> No hay ninguna advertencia de que el castigo podría ser desde una suspensión de empleo y sueldo de [120] días hasta la expulsión. Nada de lo escrito y notificado al apelante Torres Rivera #29623 le apercibe de la posibilidad de un aumento a su castigo. Lo que se dice es que si no quiere presentar prueba a su favor, se sostendrá la sanción anticipada. Esta notificación tiene el propósito de que el apelante decida si acoge o no el castigo y de solicitar la vista administrativa, poder preparar su defensa.

> .    .    .    .    .    .    .    .

> Cabe destacar además… que la Policía de Puerto Rico enmienda la sanción a tenor con el convenio de reforma policial. La mencionada enmienda no es procedente en derecho, por entre otras razones, fundamentarse en un acuerdo que se suscribió el 17 de

---

[6] Archivada en autos la copia de la notificación de la Resolución el 12 de febrero de 2014.

[7] *Resolución de la CIPA*, Apéndice de la Solicitud de *certiorari*, pág. 27.

[8] Íd., pág. 28.

julio de 2013 y que tiene carácter prospectivo.[9] (Énfasis suplido).

En consecuencia, la CIPA revocó la determinación de expulsión y ordenó a la Policía el pago de salarios, haberes y otros beneficios dejados de percibir por el señor Torres Rivera durante su suspensión.

Inconforme con la decisión de la CIPA, el 14 de marzo de 2014 la Policía presentó un recurso de revisión administrativa ante el Tribunal de Apelaciones. Así las cosas, el 30 de abril de 2014 dicho tribunal revocó la Resolución de la CIPA y devolvió el caso para que esa comisión celebrara una vista adjudicativa con el fin de atender los méritos de la reclamación ante sí.[10] El foro apelativo intermedio expresó que:

> No existe en nuestra jurisprudencia, en la Ley de la Policía de Puerto Rico, *infra*, o en el reglamento aplicable, prohibición alguna que impida al Superintendente modificar la sanción sugerida, si estima que la que procede es otra distinta, sea esta más leve o más grave a la originalmente anunciada. Ello, naturalmente, siempre que el empleado fuera adecuadamente notificado de los cargos en su contra, así como de la oportunidad de ser escuchado y de presentar alguna prueba a su favor.
>
> .   .   .   .   .   .   .   .
>
> Entonces, realizada la notificación correctamente y brindado el debido proceso de ley, surge que la Policía siguió un procedimiento justo y equitativo, conforme a las reglas del debido proceso de ley y [no] actuó *ultra vires* al aplicar una medida disciplinaria más severa a la anunciada en la notificación. (Énfasis suplido).

---

[9] *Resolución de la CIPA*, Apéndice de la Solicitud de *certiorari*,, págs. 28-29.

[10] Archivada en autos la copia de la notificación de la Sentencia el 12 de mayo de 2014.

Insatisfecho con la determinación del Tribunal de Apelaciones, el 10 de junio de 2014 el peticionario presentó una Solicitud de *certiorari* en la cual señaló los siguientes errores:

(1) Erró el [Tribunal de Apelaciones] al revocar la Resolución emitida por la [CIPA] en la cual resolvió que no se le había reconocido el debido proceso de ley al peticionario, al imponérsele como medida disciplinaria la expulsión de[l] Cuerpo de la Policía luego de celebrada la vista informal, cuando se le había advertido previamente en la Resolución de Cargos que se le impondría como medida disciplinaria una suspensión de empleo y sueldo, y en la que se le advirtió de su derecho a una vista informal previo a la imposición del referido castigo. Ello sin prueba alguna en el expediente, de alegados hechos o conducta adicional a la anunciada previamente en la Resolución de Cargos, antes de la celebración de la vista informal.

(2) Erró el [Tribunal de Apelaciones] al revocar la Resolución emitida por la [CIPA] de 20 de noviembre de 2013, al no reconocerle la facultad inherente de evaluar su propia jurisdicción apelativa al evaluar los casos presentados ante sí, previo a la celebración de la vista informal.

El 31 de octubre de 2014 expedimos el recurso de *certiorari* y más adelante, el 18 de junio de 2015, el señor Torres Rivera presentó su alegato. Por su parte, la Policía presentó su alegato en oposición el 10 de septiembre de 2015.

## II

En su alegato, el peticionario planteó que nunca se le apercibió de la posibilidad de que el castigo consistente en una suspensión de empleo y sueldo por el término de 120 días (según propuesto en la *Resolución de cargos* que le fue notificada el 28 de octubre de 2010) pudiera aumentarse antes o después de la vista

administrativa informal que solicitara. Incluso, expuso que en la *Resolución de cargos* se le indicó que si no solicitaba esa vista, entonces se entendería que renunciaba a la misma y a su derecho a estar presente y presentar prueba a su favor, de forma tal que "el castigo de suspensión se convertirá en final"[11] y tendría derecho a apelar ante la CIPA.

Aunque el peticionario reconoció que el Reglamento de Personal dispone que la expulsión del cuerpo policíaco es una de las opciones de castigo a imponerse por una falta grave, éste subrayó que la Policía autolimitó su discreción al especificar en la *Resolución de cargos* que se proponía imponer el castigo de la suspensión de empleo y sueldo por el término de 120 días.

Asimismo, el señor Torres Rivera destacó que la Policía había fundamentado la modificación de la sanción ante la existencia de un acuerdo de reforma policial.[12] No obstante, esbozó que dicho fundamento es improcedente en derecho debido a que ese acuerdo se suscribió el 17 de julio de 2013 y con carácter prospectivo, por lo que es inaplicable a unos hechos ocurridos en junio de 2003. Sobre esto, manifestó que "[s]in duda, se utilizó en su contra un convenio que no pudo controvertir porque

---

[11] *Resolución de cargos*, Apéndice de la Solicitud de *certiorari*, pág. 33.

[12] Esta Curia toma conocimiento judicial de que el nombre oficial del mencionado acuerdo es *Acuerdo para la Reforma Sostenible de la Policía de Puerto Rico* y fue suscrito el 17 de julio de 2013 por el Departamento de Justicia de Estados Unidos y el Estado Libre Asociado de Puerto Rico. Véase http://policia.pr.gov/informacion-sobre-reforma-policiaca/ (última visita el 24 de octubre de 2016).

sencillamente no existía para la fecha en la que tuvo su audiencia ante la Policía…".[13]

Por otro lado, el peticionario expuso que la CIPA tiene autoridad inherente para evaluar su propia jurisdicción apelativa al examinar los casos presentados por miembros de la Policía que fueran sancionados por la Autoridad Nominadora. Añadió que "[c]onforme a ello, [la CIPA] tiene el deber de evaluar el expediente que tiene ante sí, y velar porque se haya cumplido con los procesos no solamente establecidos en las leyes orgánicas y reglamentos de las agencias sobre las cuales su propia ley le confiere jurisdicción, sino con los preceptos constitucionales que les cobija a los empleados concernidos".[14] El señor Torres Rivera esbozó que "[a] base de su autoridad, no erró la CIPA al determinar que al apelante se le había violado su derecho a un debido proceso de ley, como parte de los procesos en la imposición de la medida disciplinaria, por lo que procedía no sostenerse en la misma".[15]

Así pues, el peticionario nos solicitó la revocación de la Sentencia del Tribunal de Apelaciones, y que ordenemos su reinstalación al puesto que ocupaba y el pago de los haberes dejados de percibir.

---

[13] Alegato de la parte peticionaria, pág. 8.

[14] Íd., pág. 10.

[15] Íd., págs. 10-11.

Por su parte, en el alegato en oposición, la Procuradora General -en representación de la Policía- indicó que el Reglamento de Personal no le impone al Superintendente de la Policía una limitación para variar su determinación sobre la medida disciplinaria luego de la vista administrativa informal, sino que tiene la potestad de imponer la sanción que "estime conveniente", incluyendo la expulsión en el caso de falta grave.[16] Añadió que "se le imputa al peticionario conocimiento de la ley y el reglamento, así que no era sorpresa que cause un perjuicio indebido el que luego se determinara imponerle la sanción máxima".[17]

La Policía sostuvo que la decisión fue conforme al debido proceso de ley y no se violó disposición alguna que pudiese invalidar la sanción de expulsión. En particular, la Policía indicó que "al peticionario se le notificó de los graves hechos sobre violación de derechos civiles a un ciudadano, de las faltas administrativas, del curso de acción específico a seguirse en su contra, se le dio oportunidad de responder a los cargos y tuvo la correspondiente vista informal". (Énfasis suplido).[18]

A su vez, la Policía expresó que el señor Torres Rivera no ha acreditado un perjuicio particular y

---

[16] Alegato de la Policía de Puerto Rico, pág. 10.

[17] Íd., pág. 14.

[18] Íd., pág. 13.

específico sobre cómo se afectó su derecho a defenderse de los cargos imputados en la vista informal. Al respecto, destacó que "[e]l mero hecho que la notificación no indicó que podría proceder una destitución, no es suficiente para anular el procedimiento, cuando de la reglamentación de la [Policía] surge que el Superintendente podía variar la medida disciplinaria a imponerse y cuando la medida estaba plenamente justificada a la luz de las faltas imputadas".[19] Mientras, sobre la sanción impuesta, indicó que ésta responde a la política pública de cero tolerancia ante el abuso policíaco.

Asimismo, la Policía manifestó que el Tribunal de Apelaciones no erró ni abusó de su discreción al ordenar a la CIPA que celebre una vista formal, ya que esto permite garantizar el debido proceso de ley al peticionario en esa etapa significativa del proceso. Sobre esto, esbozó que la CIPA viene llamada a celebrar dicha vista, por mandato de ley.

Examinados los hechos del caso, así como los argumentos esbozados por las partes en sus respectivos alegatos, procedemos a analizar el derecho aplicable y luego resolver la controversia ante nuestra consideración.

---

[19] Alegato de la Policía de Puerto Rico, pág. 16.

**III**

Como antesala, conviene repasar el proceso disciplinario que se lleva a cabo en la esfera administrativa en contra de un miembro de la Policía. Este proceso se compone de 6 etapas: (1) la investigación; (2) la formulación de cargos; (3) la celebración de la vista informal; (4) la determinación del Superintendente de la Policía; (5) la etapa apelativa ante la CIPA, y (6) la revisión judicial de la decisión emitida por la CIPA.[20]

A.   La Ley de la Policía de Puerto Rico de 1996 y el Reglamento de Personal de la Policía de Puerto Rico

En el Art. 5 de la Ley Núm. 53-1996, según enmendada, conocida como la Ley de la Policía de Puerto Rico de 1996 (Ley de la Policía), 25 LPRA sec. 3104 (Sup. 2015), se incluyen algunas facultades y deberes del Superintendente de la Policía como administrador y director del cuerpo policíaco.

El Art. 5(b) de la Ley de la Policía, *supra*, dispone que el Superintendente de la Policía "[d]eterminará por

---

[20] Asoc. Miembros Policía v. Supte. Policía, 136 DPR 271, 280 (1994). Véase, además, Arocho v. Policía de P.R., 144 DPR 765, 773 (1998).

En Arocho v. Policía de P.R., supra, el entonces Superintendente de la Policía, Lcdo. Pedro A. Toledo Dávila (Superintendente Toledo), notificó una Resolución de cargos con una sanción de suspensión de empleo y sueldo por 5 meses por las faltas graves cometidas por el Policía Miguel Arocho Hernández. En reconsideración, el Superintendente Toledo redujo la suspensión de empleo y sueldo a 15 días. Posteriormente, la Comisión de Investigación, Procesamiento y Apelación (CIPA) modificó, como cuestión de Derecho, la sanción aumentándola a 90 días de suspensión de empleo y sueldo. En aquella ocasión, esta Curia confirmó la determinación de la CIPA.

Conviene señalar que la sanción que había modificado la CIPA y que confirmamos consistía en una suspensión de empleo y sueldo de 90 días y esto se encontraba dentro del marco del término de 5 meses que había notificado el Superintendente Toledo en la Resolución de cargos.

reglamento la organización y administración de la Policía, las obligaciones, responsabilidades y conducta de sus miembros, empleados civiles, policías auxiliares, reservistas y concejales y cualquier otro asunto necesario para el funcionamiento del Cuerpo". En lo pertinente, el Art. 23 de la Ley de la Policía, 25 LPRA sec. 3122, establece lo siguiente:

El reglamento determinará las faltas de los miembros de la Fuerza que conllevaren acción disciplinaria. Dichas faltas estarán clasificadas en graves o leves. El reglamento prescribirá la acción correspondiente con arreglo a lo preceptuado en las secs. 3101 et seq. de este título.
La acción disciplinaria por faltas leves y graves se fijará en el reglamento, el cual determinará qué personas tendrán facultad para imponer sanciones en estos casos, así como el procedimiento para tramitar las mismas, sujeto a lo siguiente:

(a)  Trámite de faltas leves.-
.  .  .  .  .  .  .  .

(b)  Trámite de faltas graves.-
(1) El expediente de investigación de todo cargo grave incluirá el informe completo en torno a las imputaciones hechas contra el miembro o miembros de la Fuerza querellados. El trámite de investigación y envío del expediente se hará sin demora innecesaria. El reglamento determinará los oficiales que intervendrán en el expediente de investigación.
(2) El castigo a imponerse por faltas graves podrá ser uno de los siguientes: reasignación de funciones o reubicación, traslado, expulsión permanente del Cuerpo, degradación o suspensión de empleo sin sueldo por un período no mayor de cinco (5) meses.
(3) Los cargos por faltas graves serán formulados por escrito y firmados por el Superintendente o el Superintendente Asociado.

.  .  .  .  .  .  .  .

(6) El Superintendente, luego de examinar y analizar el expediente y de dar al querellado la oportunidad de ser escuchado, resolverá el caso, absolviendo al querellado o imponiendo el castigo que estime razonable, según lo dispone la cláusula (2) de este inciso. Si se declara incurso en falta el miembro o miembros de la Fuerza concernidos, el Superintendente entregará copia al querellado del documento contentivo de su decisión, lo que se

comprobará por medio de la firma de éste e indicando la fecha y hora de la notificación. El procedimiento para estos casos se determinará mediante reglamento.

.  .   .   .   .   .   .   .

(8) Todo miembro de la Fuerza contra quien se haya dictado una decisión adversa por el Superintendente, podrá apelar el caso ante la [CIPA], creada mediante las secs. 171 et seq. del Título 1, ante la cual tendrá derecho a vista conforme a los términos de dichas secciones.   La apelación deberá presentarse dentro de los treinta (30) días de recibir la notificación de castigo.

En virtud de la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, según enmendada, 3 LPRA ant. sec. 1301 *et seq.* (derogada) y la Ley de la Policía de Puerto Rico de 1974, Ley Núm. 26 de 22 de agosto de 1974, según enmendada, 25 LPRA ant. sec. 1001 *et seq.* (derogada), se promulgó el Reglamento de Personal de la Policía de Puerto Rico, Reglamento Núm. 4216 del Departamento de Estado, 11 de mayo de 1990 (Reglamento de Personal).

En lo concerniente, la Sec. 14.3(2)(a) del Reglamento de Personal establece que:

El Superintendente tomará las medidas correctivas apropiadas cuando un miembro de la Policía de Puerto Rico incurra en violación de cualquiera de las faltas clasificadas en graves o leves.   El castigo a imponerse por falta grave podrá ser uno de los siguientes: expulsión del Cuerpo, degradación o suspensión de empleo y sueldo por un período no mayor de cinco (5) meses […]

Asimismo, el Reglamento de Personal dispone en su Sec. 14.3(2)(b)(1)(a), las etapas del procedimiento disciplinario contra un miembro de la Policía que haya incurrido en una falta grave.   Acorde con dicha sección, el proceso comienza con una investigación administrativa

y luego se emite una determinación sobre si procede o no tomar una medida disciplinaria. En caso de que se determine tomar una acción disciplinaria, entonces se prosigue con la formulación de cargos, lo cual se notifica al miembro de la Policía y se le advierte su derecho a solicitar una vista administrativa informal ante un Oficial Examinador. En esa vista, el miembro de la Policía tiene derecho a presentar evidencia y comparecer personalmente o a través de un representante legal. Asimismo, se le advierte que una vez se celebre la vista o que haya transcurrido el término establecido sin que ésta se hubiese solicitado, el Superintendente de la Policía tomará la decisión que estime conveniente. En caso de que la decisión del Superintendente de la Policía fuera la destitución o expulsión, degradación, suspensión de empleo y sueldo, amonestación o reprimenda, se le advierte al miembro de la Policía que tiene derecho a apelar ante la CIPA.

B. La Comisión de Investigación, Procesamiento y Apelación (CIPA)

La Comisión de Investigación, Procesamiento y Apelación (CIPA), creada en virtud de la Ley Núm. 32 de 22 de mayo de 1972 (Ley 32), según enmendada, 1 LPRA sec. 171 *et seq.*, está facultada con poderes cuasijudiciales para intervenir en aquellos casos en los que se impute mal uso o abuso de autoridad a cualquier agente del orden público estatal o municipal, agente de rentas internas o cualquier otro funcionario de la Rama

Ejecutiva estatal o municipal, autorizado para efectuar

arrestos.[21]   Conforme al Art. 2 de la Ley 32, 1 LPRA

sec. 172, la CIPA podrá ejercer sus funciones en primera

instancia -1 LPRA sec. 172(1)- o en apelación -1 LPRA

sec. 172(2)-.[22]

En lo que atañe al caso de epígrafe, la CIPA, en su

función como cuerpo apelativo, revisará las actuaciones

disciplinarias que realizan los jefes o directores sobre

los funcionarios comprendidos por la ley.[23] En lo

pertinente, el Art. 2(2) de la Ley 32,

1 LPRA sec. 172(2), dispone que la CIPA:

> [a]ctuará como <u>cuerpo apelativo con jurisdicción
> exclusiva</u> para oír y resolver apelaciones
> interpuestas por los funcionarios públicos cubiertos
> por este capítulo, cuando el jefe o director, del
> organismo o dependencia de que se trata les haya
> impuesto cualquier medida disciplinaria en relación
> con actuaciones cubiertas por este capítulo […]
>
> Tanto el funcionario querellado, como el ciudadano
> perjudicado que hubiese radicado una querella formal
> ante la autoridad facultada para sanciones, tendrá un
> término de treinta (30) días para apelar ante la
> Comisión, contados a partir de la notificación de la
> determinación de la referida autoridad.
>
> <u>La Comisión, luego de celebrar la vista
> correspondiente</u>, según lo dispuesto en el inciso (3)
> de la sec. 173 de este título, <u>podrá confirmar,
> revocar o modificar la determinación o actuación de
> la cual se hubiere apelado, o podrá imponer cualquier
> sanción que la autoridad facultada para sancionar
> hubiese podido imponer</u>. No obstante lo anterior, la
> Comisión podrá modificar su determinación a los fines
> de aumentar o agravar una sanción sólo cuando, de un
> análisis del expediente, o de la prueba desfilada
> ante dicho organismo, o ambas, se desprenda que el
> jefe o director de la dependencia hubiese impuesto un
> castigo que, razonablemente, no vaya de acuerdo con

---

[21] Véase <u>Ortiz Ruiz v. Superintendente Policía</u>, 132 DPR 432, 438-439 (1993).

[22] Íd., pág. 439.

[23] <u>Ortiz Ruiz v. Superintendente Policía</u>, supra, pág. 439.

los hechos que originaron la querella presentada. (Énfasis suplido).

Conforme a sus facultades, la CIPA adoptó el Reglamento para la presentación, investigación y adjudicación de querellas y apelaciones ante la Comisión de Investigación, Procesamiento y Apelación, Reglamento Núm. 7952 del Departamento de Estado, 1 de diciembre de 2010 (Reglamento de la CIPA). El Art. 15(1)(a) del mencionado Reglamento dispone que la CIPA actuará como cuerpo apelativo "[p]ara oír y resolver apelaciones interpuestas por los funcionarios públicos cubiertos por la Ley, cuando el Jefe o Director del organismo o dependencia de que se trate haya impuesto cualquier medida disciplinaria en relación con actuaciones cubiertas por la Ley".

Por su parte, el Art. 4(w) del Reglamento de la CIPA define "apelación" como el escrito mediante el cual la parte apelante impugna la decisión emitida por la autoridad nominadora y en el que solicita que la CIPA celebre una vista. Mientras, el Art. 10 del Reglamento de la CIPA regula el inicio del procedimiento de adjudicación. En específico, el inciso 1 del Art. 10 de dicho Reglamento expresa que "[t]odo procedimiento de investigación y/o adjudicación comienza a iniciativa de la Comisión o con la presentación de la querella, apelación o petición en las oficinas de la [CIPA], donde se recibirán los documentos y se abrirá el expediente administrativo".

Sobre el trámite de presentación, el Reglamento de la CIPA dispone en su Art. 10(2) que la apelación se presentará en la Secretaría de la CIPA dentro del término de 30 días, contado desde la fecha en que la parte apelante fue notificada de la determinación a impugnarse.[24] Mientras, el Art. 10(3) de dicho Reglamento establece que en las apelaciones de funcionarios públicos bajo la jurisdicción de la CIPA se incluirá: (1) la Resolución de cargos o Carta de intención, y (2) la Resolución final.

Según el Art. 10(5) del Reglamento de la CIPA, una vez se haya presentado la apelación con los documentos requeridos, la CIPA señalará fecha para vista y lo notificará a las partes por correo. La parte apelante y la parte querellada pueden comparecer a dicha vista por derecho propio o con abogado, conforme dispone el Art. 21(4) del Reglamento de la CIPA.

Como vimos, el Art. 2(2) de la Ley 32, *supra*, requiere que la CIPA, dentro de su facultad apelativa, celebre una vista. Ello quiere decir que la CIPA tiene la obligación de así hacerlo.[25] Este Tribunal ha

---

[24] El Art. 4(m) del Reglamento para la presentación, investigación y adjudicación de querellas y apelaciones ante la Comisión de Investigación, Procesamiento y Apelación, Reglamento Núm. 7952 del Departamento de Estado, 1 de diciembre de 2010, pág. 3, define "apelante" como aquel "[a]gente del orden público, agente de Rentas Internas, o cualquier otro funcionario de la Rama Ejecutiva autorizado para efectuar arrestos que recurra en apelación ante la CIPA o cualquier ciudadano perjudicado que recurra en apelación ante la Comisión por no estar conforme con la determinación de la autoridad facultada para sancionar".

[25] Véase Arocho v. Policía de P.R., supra, pág. 772.

reconocido que dicha vista es una especie de juicio *de novo* en el cual la CIPA -como organismo administrativo- tiene la oportunidad de escuchar nuevamente toda la prueba y otorgarle el valor probatorio que a su juicio merezca la misma.[26] Asimismo, la CIPA puede llegar a determinaciones de hecho o conclusiones de derecho diferentes a las que emitió el Superintendente de la Policía.[27]

En cuanto a la desestimación o disposición sumaria de una apelación, el Art. 26 del Reglamento de la CIPA expresa que la Comisión y/o el Juez Administrativo podrá desestimar o disponer sumariamente de una apelación *motu proprio* o a petición de parte, si entiende que ésta no expone hechos que justifiquen la concesión de un remedio o si no habiendo controversia real en los hechos, como cuestión de derecho, procede que se dicte resolución a favor de la parte promovente.

C.   El debido proceso de ley y el empleado de carrera

La Constitución de Puerto Rico, en su Art. II, Sec. 7, reconoce el derecho a un debido proceso de ley como salvaguarda de las privaciones de libertad o propiedad.[28] Específicamente, el debido proceso de ley en su vertiente procesal es el que regula las garantías mínimas que el Estado debe proveer al ciudadano que se le

---

[26] Ramírez v. Policía de P.R., 158 DPR 320, 332 (2002); Arocho v. Policía de P.R., supra, pág. 772.

[27] Arocho v. Policía de P.R., supra, pág. 772.

[28] Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. Véase, además, Vázquez González v. Mun. de San Juan, 178 DPR 636, 643 (2010).

está afectando su vida, libertad o propiedad.[29] Lo fundamental es que el debido proceso de ley en su vertiente procesal exige que el Estado realice un procedimiento justo y equitativo al momento de intervenir con el interés propietario de una persona.[30]

Ante un reclamo basado en el principio constitucional del debido proceso de ley en su vertiente procesal, corresponde identificar si existe un interés que amerite protección. Si se contesta en la afirmativa, procede evaluar cuál es el procedimiento debido.[31]

En múltiples instancias, este Foro ha manifestado que al empleado público se le reconoce un interés en la retención de su empleo, ello siempre que ese interés se encuentre protegido por ley, como en el caso de los empleados de carrera,[32] o cuando las circunstancias del empleo le creen una expectativa de continuidad.[33] Esto es, los empleados de carrera poseen un interés

---

[29] Picorelli López v. Depto. de Hacienda, 179 DPR 720, 735-736 (2010); Álamo Romero v. Adm. de Corrección, 175 DPR 314, 329 (2009); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 DPR 881, 887-888 (1993).

[30] Mun. de San Juan v. Jta. Planificación, 189 DPR 895, 907 (2013); In re García Vega, 189 DPR 741, 755 (2013); González Segarra v. CFSE, 188 DPR 252, 278 (2013).

[31] Álamo Romero v. Adm. de Corrección, supra, pág. 329.

[32] Conforme nos plantea el profesor Demetrio Fernández Quiñones, el empleado de carrera es aquel que ha sido sometido a un período probatorio y al completar éste de manera satisfactoria se convierte en un empleado regular de carrera. D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 3ra ed., Bogotá, Ed. Forum, 2013, págs. 504-505.

[33] Rosa Maisonet v. ASEM, 192 DPR 368, 384 (2015); Adventist Health v. Mercado, 171 DPR 255, 263 (2007); S.L.G. Giovanetti v. E.L.A., 161 DPR 492, 506-507 (2004); Orta v. Padilla Ayala, 131 DPR 227, 241 (1992).

propietario sobre sus plazas, de manera que son acreedores de un debido proceso de ley.[34]

De existir un interés protegido, la agencia nominadora tendría que cumplir con ciertos procedimientos para privar al empleado de su empleo, de forma tal que se cumpla con el debido proceso de ley.[35] Así pues, para garantizar las exigencias mínimas de un debido proceso de ley en su vertiente procesal es fundamental cumplir con estos requisitos: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el expediente.[36]

En cuanto al requisito de notificación adecuada, en U. Ind. Emp. A.E.P. v. A.E.P., 146 DPR 611, 634 (1998), indicamos que éste tiene el propósito de "poner al empleado público al tanto de los cargos en su contra y de la consecuencia que podrían acarrear éstos. Así, el empleado estará en posición de expresar su versión de los hechos y las razones por las cuales no debe ser disciplinado". (Énfasis nuestro).

---

[34] Vázquez González v. Mun. de San Juan, supra, pág. 643.

[35] S.L.G. Giovanetti v. E.L.A., supra, págs. 506-507.

[36] Véanse los casos normativos de Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), y Torres Solano v. P.R.T.C, 127 DPR 499 (1990). Véanse, además: Rosa Maisonet v. ASEM, supra, pág. 384; Vázquez González v. Mun. de San Juan, supra, pág. 643; Domínguez Castro v. ELA, 178 DPR 1, 47 (2010); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 DPR 881, 889 (1993).

D. <u>La revisión judicial de las decisiones de las agencias administrativas</u>

Según nos plantea el profesor Demetrio Fernández, la función principal de la revisión judicial "es asegurarse de que las agencias actúan dentro del marco del poder delegado y consistentes con la política legislativa".[37] Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos debemos conceder deferencia a las decisiones de las agencias administrativas, ello debido a la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado.[38] Por ello, dichas determinaciones poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas.[39]

En reiteradas ocasiones, este Foro ha expresado que el principio rector en la revisión judicial de las decisiones e interpretaciones de una agencia

---

[37] Fernández Quiñones, <u>op. cit.</u>, pág. 669.

[38] <u>Asoc. Fcias. v. Caribe Specialty et al. II</u>, 179 DPR 923, 940 (2010). Véanse, además: <u>González Segarra et al. v. CFSE</u>, 188 DPR 252, 276 (2013); <u>Pagán Santiago et al. v. ASR</u>, 185 DPR 341, 358 (2012); <u>Pereira Suárez v. Jta. Dir. Cond.</u>, 182 DPR 485, 511 (2011); <u>Com. Seg. v. Real Legacy Assurance</u>, 179 DPR 692, 717 (2010), <u>Mun. de San Juan v. CRIM</u>, 178 DPR 163, 175 (2010); <u>Martínez v. Rosado</u>, 165 DPR 582, 589 (2005); <u>Otero v. Toyota</u>, 163 DPR 716, 727 (2005); <u>Misión Ind. P.R. v. J.P.</u>, 146 DPR 64, 130 (1998).

[39] <u>Trigo Margarida v. Junta de Directores</u>, 187 DPR 384, 393-394 (2012); <u>Batista, Nobbe v. Jta. Directores</u>, 185 DPR 206, 215 (2012); <u>IFCO Recycling v. Aut. Desp. Sólidos</u>, 184 DPR 712, 744 (2012); <u>Torres Santiago v. Depto. Justicia</u>, 181 DPR 969, 1002-1003 (2011); <u>Calderón Otero v. C.F.S.E.</u>, 181 DPR 386, 395-396 (2011).

administrativa es el criterio de la razonabilidad.[40]  Así pues, la revisión judicial se debe limitar a determinar si la agencia actuó de manera arbitraria o ilegal, o en forma tan irrazonable que su actuación constituye un abuso de discreción.[41]

De acuerdo a lo dispuesto por la Sec. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 LPRA sec. 2175, conocida como la Ley de Procedimiento Administrativo Uniforme (LPAU), la revisión judicial de las decisiones administrativas comprende 3 aspectos: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas, ello mediante una revisión completa y absoluta.[42]

En cuanto a las determinaciones de hecho de una agencia administrativa, conforme a la Sec. 4.5 de la LPAU, *supra*, éstas se sostendrán si se fundamentan en evidencia sustancial que conste en el expediente

---

[40] Mun. San Juan v. Plaza Las Américas, 169 DPR 310, 323 (2006); Rebollo v. Yiyi Motors, 161 DPR 69, 76 (2004).

[41] Calderón Otero v. C.F.S.E., supra, pág. 396.

[42] Pagán Santiago et al. v. ASR, supra, pág. 358; Asoc. Fcias. v. Caribe Specialty et al. II, supra, pág. 940; Rivera v. A & C Development Corp., 144 DPR 450, 460-461 (1997). Véase, además, Fernández Quiñones, op cit., pág. 688.

administrativo considerado en su totalidad.[43]  Esta regla de la evidencia sustancial es para "evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor".[44]

Respecto a las conclusiones de derecho, la Sec. 4.5 de la LPAU, *supra*, también dispone sobre ello al expresar que éstas "serán revisables en todos sus aspectos por el tribunal".  Sin embargo, valga destacar que los tribunales deben darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra.[45]  Ante esto, los tribunales no pueden descartar libremente las conclusiones e interpretaciones de la agencia administrativa con el fin de sustituir el criterio de éstas por el propio.[46]  Claro está, la deferencia que le deben los tribunales a la interpretación que haga la agencia administrativa sobre aquellas leyes y reglamentos que le corresponde poner en vigor cede si la agencia: (1) erró al aplicar la ley;

---

[43] Véanse, además: Torres Santiago v. Depto. Justicia, 181 DPR 969, 1003 (2011); Asoc. Fcias. v. Caribe Specialty et al. II, supra; JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 186-187 (2009); Hernández, Álvarez v. Centro Unido, 168 DPR 592, 614-615 (2006).

[44] P.R.T.C. v. J. Reg. Tel. de P.R., 151 DPR 269, 282 (2000); Misión Ind. P.R. v. J.P., supra, pág. 131; Reyes Salcedo v. Policía de P.R., 143 DPR 85, 95 (1997).

[45] Hernández, Álvarez v. Centro Unido, 168 DPR 592, 615 (2006).

[46] Calderón Otero v. C.F.S.E., supra, pág. 397; Mun. San Juan v. Plaza Las Américas, supra, pág. 32; Hernández, Álvarez v. Centro Unido, supra, pág. 615.

(2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales.[47]

En resumen, los tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales.[48] Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.

E. La revisión judicial de las determinaciones emitidas por la Comisión de Investigación, Procesamiento y Apelación (CIPA)

El Art. 3 de la Ley 32, 1 LPRA sec. 173, establece que las decisiones de la CIPA podrán ser revisadas mediante recurso interpuesto dentro del término de

---

[47] Acarón et al. v. D.R.N.A., 186 DPR 564, 585 (2012); Mun. San Juan v. Plaza Las Américas, supra, pág. 324.

[48] The Sembler Co. v. Mun. de Carolina, 185 DPR 800, 822 (2012); IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 744-745 (2012); Asoc. Fcias. v. Caribe Specialty et al. II, supra, págs. 941-942; Otero v. Toyota, 163 DPR 716, 729 (2005).

30 días, contado desde que fuera notificado el dictamen de dicho organismo administrativo. Específicamente, el Art. 3 de la Ley 32, *supra*, dispone que la revisión judicial de las decisiones de la CIPA se limita a "cuestiones de derecho y a la determinación de si existe o no evidencia sustancial para sostener las conclusiones de hecho de la Comisión".

## IV

Por estar estrechamente vinculados entre sí, discutiremos en conjunto los dos errores señalados.

En síntesis, el peticionario argumenta que el Tribunal de Apelaciones erró al revocar la decisión de la CIPA, pues él entiende que la Policía sí violentó el debido proceso de ley que le cobija como empleado de carrera del cuerpo policíaco dado a que le impuso la sanción mayor de la expulsión aun cuando le había notificado previamente en la *Resolución de cargos* que impondría una suspensión de empleo y sueldo por el término de 120 días como medida disciplinaria. El señor Torres Rivera tiene razón en su planteamiento. Veamos.

Del expediente del caso no surge que la Policía le advirtiera al señor Torres Rivera sobre la posibilidad de que la medida disciplinaria propuesta en la *Resolución de cargos*, esto es la suspensión de empleo y sueldo por el término de 120 días, pudiera aumentarse antes o después de celebrada la vista administrativa informal ante el Oficial Examinador. Incluso, en la propia *Resolución de*

*cargos* la Policía le indicó que si no solicitaba la vista informal, se entendería que renunciaba a la misma, y a su derecho a estar presente y presentar prueba a su favor, por lo que "<u>el castigo de suspensión se convertir[ía] en final</u>" y tendría derecho a apelar ante la CIPA "dentro del término de treinta (30) días calendario, contados a partir de la Resolución Final que se emit[iera] imponiéndole el <u>referido castigo</u>".[49] (Énfasis suplido). Dichas expresiones evidencian con claridad el objetivo de la Policía respecto a la medida disciplinaria que impondría contra el peticionario: una suspensión de empleo y sueldo por el término de 120 días y no más.

A pesar de que el peticionario solo fue notificado de la imposición de una suspensión de empleo y sueldo por el término de 120 días, luego de la vista administrativa informal fue castigado con la sanción máxima dispuesta en el Reglamento de Personal: la expulsión del cuerpo de la Policía. ¿Qué otra actuación puede ser más contraria a derecho y violatoria del debido proceso de ley?

No existe duda de que una debida notificación en un procedimiento adjudicativo como es el presente caso comprende que el empleado sea advertido de la posible sanción a la que se expone como resultado <u>del proceso particular</u> al que se enfrenta.[50] Aún más, ante la

---

[49] *Resolución de cargos*, Apéndice de la Solicitud de *certiorari*, págs. 33-34.

[50] En <u>Torres Solano v. P.R.T.C.</u>, supra, págs. 526-527, expresamos que:

necesaria protección del interés propietario que posee un empleado público sobre su empleo de carrera, el debido proceso de ley exige no solo que se le advierta cuáles son las sanciones a las que se expone, <u>sino a no ser inducido por el propio Estado a descartar posibles sanciones.</u> Esto, pues el empleado tiene derecho a conocer el cuadro claro de su situación particular antes de tomar una decisión en cuanto a la estrategia legal a seguir. No puede validarse la protección de tal interés propietario fuera de un proceso justo enmarcado en el debido proceso de ley y constituye una clara mácula a ese debido proceso de ley el que el ciudadano sea inducido por el Estado a la posibilidad de algo distinto a lo que finalmente resulta ser.   Por eso, una vez el empleado acepta las condiciones de lo que constituirá el proceso en su contra, no puede el Estado variar tales condiciones so color de que un reglamento en particular o de que un acuerdo de reforma policial lo permita.  <u>No se trata de lo que el Estado tiene derecho a hacer, sino de lo que el Estado le anunció al empleado que haría.</u>

---

[L]os requisitos procesales que cumplen con las garantías constitucionales mínimas sobre la vista informal previa al despido son los siguientes:

Debe notificarse a la parte contra quien se va a tomar tal medida disciplinaria del curso de acción específico a seguirse en su contra.  Deberá concedérsele una oportunidad a responder a los cargos.  La vista no debe ser compleja, complicada, extensa o formal.  Basta con que se le permita al empleado explicar personalmente o por escrito las razones por las cuales, según él, no debe ser disciplinado así.  El empleado público tiene derecho a que se le notifiquen, por escrito, los cargos en su contra.  (Citas omitidas).

Por ello, coincidimos con el planteamiento de la CIPA respecto a que "[n]o tendría sentido instruir al funcionario sobre su derecho a una vista [administrativa informal] si éste desconoce la penalidad a la que se expone".[51] Lo cierto es que si la autoridad nominadora pudiese imponer cualquier castigo mayor que no le haya anticipado, el funcionario es colocado en la disyuntiva de decidir si ejercita o no su derecho a la vista administrativa por desconocer hasta dónde puede ser castigado. Incluso, en ocasiones, hasta se vería motivado a no solicitar la vista y aceptar los cargos según notificados, esto para no exponerse a sanciones mayores, lo que tornaría el derecho a una vista administrativa informal en un acto fútil.

Como mencionamos, la Policía fundamentó la modificación de la sanción propuesta debido a la existencia de un acuerdo de reforma policial para asegurar la protección de los derechos civiles.[52] Ante esto, la representación legal del señor Torres Rivera manifestó que "[s]in duda, se utilizó en su contra un convenio que no pudo controvertir porque sencillamente no existía para la fecha en la que tuvo su audiencia ante la Policía […]".[53]

---

[51] *Resolución de la CIPA*, Apéndice de la Solicitud de *certiorari*, pág. 29.

[52] Este acuerdo se conoce como el Acuerdo para la Reforma Sostenible de la Policía de Puerto Rico. Véase nota 12.

[53] Alegato de la parte peticionaria, pág. 8.

En cuanto al planteamiento esbozado por la Procuradora General con relación a que al señor Torres Rivera se le imputa el conocimiento de la ley y el reglamento, de forma tal que "no era sorpresa que caus[ara] un perjuicio indebido el que luego se determinara imponerle la sanción máxima",[54] conviene aclarar que el hecho de que un reglamento disponga que una falta puede acarrear hasta la sanción máxima de la expulsión no significa que ésta se le pueda imponer al empleado sin antes haber cumplido con el debido proceso de ley. Claramente, correspondía que la Policía notificara adecuadamente al agente desde un principio en la *Resolución de cargos* que éste podía estar expuesto a la medida disciplinaria de la expulsión, ello como requisito previo para poder imponerle la sanción máxima. No obstante, la Policía limitó su discreción y notificó la propuesta de imponerle una suspensión de empleo y sueldo por un término fijo de 120 días.

Por lo antes expuesto, concluimos que una autoridad nominadora, en este caso el Superintendente de la Policía, está impedida de imponer como medida disciplinaria una sanción mayor a la que había notificado previamente al empleado público en la notificación de cargos, esto sin concederle la oportunidad de defenderse. Actuar contrario a esto constituye una violación al debido proceso de ley y un trato injusto contra el

---

[54] Alegato de la Policía de Puerto Rico, pág. 14.

empleado público de que se trate. En este caso, el Tribunal de Apelaciones entendió que "[l]a variación entre las sanciones en nada afectó el debido proceso de ley del Sr. Torres Rivera".[55] Erró el foro apelativo intermedio al así concluir sobre el asunto.

Por último, la Policía manifestó que el foro apelativo intermedio no erró ni abusó de su discreción al ordenar que la CIPA celebre una vista adjudicativa formal, pues dicha comisión viene obligada a celebrar dicha vista, por mandato de ley. En cuanto a este asunto, coincidimos con el Tribunal de Apelaciones respecto a que, conforme a las circunstancias del caso de epígrafe, procedía la celebración de una vista adjudicativa formal ante la CIPA para que ambas partes pudieran exponer su caso ante dicho foro. Así lo requiere el Art. 2(2) de la Ley 32, *supra*, y el Art. 10(5) del Reglamento de la CIPA, *supra*. Sin embargo, modificamos la Sentencia recurrida para exponer que luego de celebrar la mencionada vista, de entender que procede una medida disciplinaria, <u>la CIPA se tendrá que circunscribir a imponer una medida que no podrá exceder de una suspensión de empleo y sueldo por el término de 120 días</u>.

V

Por los fundamentos antes expuestos, modificamos la Sentencia recurrida a los fines de devolver el caso a la

---

[55] *Sentencia del Tribunal de Apelaciones*, Apéndice de la Solicitud de *certiorari*, pág. 20.

CIPA para que celebre una vista adjudicativa formal en el caso del Sr. José L. Torres Rivera y, de entender que procede una medida disciplinaria, se circunscriba a imponer una medida que no podrá exceder de una suspensión de empleo y sueldo por el término de 120 días.

Se dictará sentencia de conformidad.


                                        Erick V. Kolthoff Caraballo
                                               Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex-Agte. José L. Torres
Rivera

    Peticionario

      v.            CC-2014-445     Certiorari

Policía de Puerto Rico

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 24 de octubre de 2016.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, modificamos la Sentencia recurrida a los fines de devolver el caso a la Comisión de Investigación, Procesamiento y Apelación para que celebre una vista adjudicativa formal en el caso del Sr. José L. Torres Rivera y, de entender que procede una medida disciplinaria, <u>se circunscriba a imponer una medida que no podrá exceder de una suspensión de empleo y sueldo por el término de 120 días</u>.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres hace constar la siguiente expresión a la cual se unen la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón:

"Estoy conforme con la Opinión que hoy emite este Tribunal porque le garantiza al Sr. José L. Torres Rivera un proceso justo que cumple con las garantías del debido proceso de ley. Lo resuelto no impide que el Superintendente de la Policía, comience un nuevo proceso

disciplinario, independiente del anterior, que de conformidad con lo expuesto en la Opinión del Tribunal, cumpla con las exigencias del debido proceso de ley. Véase Carrón Lamoutte v. Compañía de Turismo, 130 DPR 70 (1992)."

La Jueza Presidenta Oronoz Rodríguez, la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Colón Pérez concurren con el resultado sin opinión escrita.

                          Juan Ernesto Dávila Rivera
                          Secretario del Tribunal Supremo