ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| SONNELL FLEET SOLUTIONS II, LLC<br><br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DEL MUNICIPIO DE COROZAL<br><br>Recurrido | KLRA202400190 | *Revisión Judicial* procedente de la Junta de Subastas del Municipio de Corozal<br><br>Subasta Núm.: 005 2023-2024<br><br>Sobre: Subasta Municipal |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Juez Rivera Pérez y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de mayo de 2024.

Comparece la parte recurrente, Sonnell Fleet Solutions II, LLC., (Sonnell), quien solicita nuestra intervención para revocar la adjudicación de la Subasta Número 005 2023-2024, realizada por la parte recurrida, la Junta de Subastas del Municipio de Corozal (Junta de Subastas).

Por los fundamentos que expondremos adelante, anticipamos la revocación de la determinación administrativa.

**I.**

Surge del expediente que examinamos que la Junta de Subastas celebró la Subasta Número 005 2023-2024, intitulada *Servicio del mantenimiento y reparación a la flota vehicular adquirida con fondos de la Administración Federal de Transporte (FTA, por sus siglas en inglés) del Municipio de Corozal.*[1] La subasta formal se llevó a cabo el 29 de febrero de 2024.[2] Sonnell[3] y Truckars, Inc. (Truckars)[4] fueron los únicos dos licitadores.[5]

---

[1] Apéndice del recurso, págs. 1-29.
[2] Los licitadores debían presentar sus ofertas el 28 de febrero de 2024, en o antes de las cuatro de la tarde.
[3] Apéndice del recurso, págs. 30-196.
[4] Apéndice del recurso, págs. 205-282.
[5] De los autos se desprende que, el 20 de febrero de 2024, se pautó la reunión presubasta, la cual constituía un requisito indispensable. Además, la Junta de

Número Identificador

SEN2024 _____

Truckars obtuvo la *buena pro,* según fue adjudicado el 27 de marzo de 2024 y notificado el 3 de abril de 2024.[6]

Inconforme, el 12 de abril de 2024, Sonnell recurrió de la decisión ante este foro intermedio y esbozó los siguientes errores:

> ERRÓ LA JUNTA DE SUBASTAS AL CONCLUIR QUE TRUCKARS, INC, CUMPLIÓ CON TODOS LOS REQUISITOS; POR LO QUE ÉSTE NO ES UN LICITADOR RESPONSIVO.
>
> ERRÓ LA JUNRA DE SUBASTAS AL NO DESCALIFICAR A TRUCKARS, INC. YA QUE NO CUMPLIÓ CON TODOS LOS REQUISITOS; Y POR ENDE NO ADJUDICARLE LA SUBASTA A SONNELL.

Sonnell acompañó el recurso de revisión judicial con una *Urgente moción en auxilio de jurisdicción.* Adujo que la Junta de Subastas obró de manera arbitraria en la adjudicación de la licitación del epígrafe, por lo que solicitó la paralización de los procedimientos. Mediante nuestra *Resolución* de 12 de abril de 2024 ordenamos la inmediata paralización de los procesos relacionados con la correspondiente ejecución de la adjudicación de la subasta. Además, concedimos a la parte recurrida un término de diez días para presentar su postura. En cumplimiento, la Junta de Subastas instó *Oposición a revisión administrativa y solicitud de desestimación* el 23 de abril de 2024.[7] Con el beneficio de su comparecencia, resolvemos.

**II.**

**A.**

Es sabido que, al revisar las determinaciones administrativas finales, los tribunales apelativos estamos compelidos a conceder deferencia, por la experiencia y conocimiento pericial que se presume tienen los organismos ejecutivos y municipales para atender y resolver los asuntos que le

---

Subastas proveyó un correo electrónico para que los licitadores plantearan sus dudas en torno al pliego de subasta. Apéndice del recurso, pág. 3.

[6] Apéndice del recurso, págs. 197-200.

[7] La Junta de Subasta se opuso, por igual, a la paralización decretada; véase, *Oposición a Urgente moción en auxilio de jurisdicción y solicitud para dejar sin efecto Resolución de paralización.*

han sido delegados. *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016). Al respecto, el Tribunal Supremo de Puerto Rico ha reiterado que las determinaciones de los organismos administrativos "poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas". *Rolón Martínez v. Supte. Policía, supra*; *Torres Rivera v. Policía de PR, supra*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012); *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002-1003 (2011). Por ende, nuestra intervención sólo se justifica cuando el ente administrativo haya obrado de forma arbitraria, ilegal o irrazonable. En esas circunstancias, entonces, cederá la deferencia que ostenta en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra. *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009). En torno a esto, en *Torres Rivera v. Policía de PR, supra*, el Tribunal Supremo expuso las normas básicas sobre el alcance de la revisión judicial:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Torres Rivera v. Policía de PR, supra*, pág. 628.

Así, pues, es norma asentada que el norte al ejercer nuestra facultad revisora es el criterio de razonabilidad. *Super Asphalt v.*

*AFI y otro, supra*, pág. 821; *Graciani Rodriguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Torres Rivera v. Policía de PR, supra*, pág. 626; *Empresas Loyola v. Com. Ciudadanos*, 186 DPR 1033, 1042-1043 (2012). Por lo tanto, **intervendremos únicamente cuando el organismo recurrido haya actuado de una manera tan irrazonable que su actuación constituya un abuso de discreción**. *Super Asphalt v. AFI y otro, supra*, pág. 821; *Graciani Rodriguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Rolón Martínez v. Supte. Policía, supra*.

### B.

Como se conoce, el proceso de contratación de servicios por el aparato gubernamental está revestido del más alto interés público, toda vez que aspira "promover la *inversión adecuada, responsable y eficiente de los recursos del Estado*". (Cursivas en el original). *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *ECA General Contractors, Inc. v. Municipio*, 200 DPR 665, 672 (2018). De ordinario, el procedimiento de subasta es el vehículo utilizado por el Gobierno en la adquisición de bienes y servicios. *Super Asphalt v. AFI y otro, supra*, págs. 820-821; *ECA General Contractors, Inc. v. Municipio, supra*, pág. 672. "[L]a subasta gubernamental procura establecer un esquema que asegure la **competencia equitativa entre los licitadores**, evite la corrupción y **minimice los riesgos de incumplimiento**". (Énfasis nuestro). *Super Asphalt v. AFI y otro, supra*, pág. 821; *ECA General Contractors, Inc. v. Municipio, supra*, págs. 672-673. Asimismo, ante la ausencia de un estatuto uniforme que regule la subasta gubernamental, cada organismo ejerce su poder de reglamentación para establecer las normas que regirán sus procedimientos de subasta. *Super Asphalt v. AFI y otro, supra*. A tales efectos, el

Artículo 7.012, *Compras y Suministros*, 21 LPRA sec. 7961, del

Código Municipal de Puerto Rico[8] establece:

> Todas las compras de bienes y servicios se efectuarán de acuerdo a las normas y reglamentos que adopte la Junta. Tales normas y reglamentos dispondrán que toda compra y contrato de suministros o servicios, excluyendo los profesionales, que exceda de la cantidad de cien mil (100,000) dólares, conllevará la celebración de una subasta formal. Cuando el importe de dicha adquisición o contrato sea menor de dicha cantidad, se dispondrá por reglamento un procedimiento para la solicitud de cotizaciones de por lo menos tres (3) licitadores o suplidores.

Por su parte, el Artículo 1.050 del Código Municipal de 2020,

21 LPRA sec. 7081, dispone para la revisión de las subastas

municipales por parte de este foro intermedio:

> El Tribunal de Apelaciones revisará, el acuerdo final o adjudicación de la Junta de Subastas, el cual se notificará por escrito y mediante copia por correo escrito regular y certificado a la(s) parte(s) afectada(s). La solicitud de revisión se instará dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la copia de la notificación del acuerdo final o adjudicación. La notificación deberá incluir el derecho de la(s) parte(s) afectada(s) de acudir ante el Tribunal de Circuito de Apelaciones para la revisión judicial; término para apelar la decisión; fecha de archivo en auto de la copia de la notificación y a partir de qué fecha comenzará a transcurrir el término. La competencia territorial será del circuito regional correspondiente a la región judicial a la que pertenece el municipio.

Finalmente, en lo que atañe al caso del título, es pertinente

examinar las disposiciones del *Reglamento para la Administración*

*Municipal*, Reglamento Núm. 8873 de 19 de diciembre de 2016

(Reglamento 8873). La Parte II, Sección 5, de la reglamentación

aludida atiende el **contenido de los pliegos de especificaciones**

**de la subasta**. En particular, el inciso (4) establece:

> Los pliegos de la subasta contendrán instrucciones específicas y precisas sobre los términos y condiciones de la referida invitación. **El municipio redactará las especificaciones, de manera que expresen claramente las necesidades de la unidad requirente**. Además, deben incluir sólo aquellas

---

[8] Ley Núm. 107 de 13 de agosto de 2020, según enmendada, 21 LPRA sec. 7001, *et seq.*

restricciones o condiciones necesarias para satisfacer las necesidades municipales. (Énfasis nuestro).

En su Capítulo VIII, Parte I, Sección 5, el Reglamento 8873 dispone los requerimientos de un **licitador responsable**:

(1) Tiene recursos financieros adecuados para cumplir su obligación o la habilidad de obtener tales recursos.

(2) Es capaz de cumplir con los términos requeridos o propuestos de entrega, según estipulados o requeridos.

(3) Tiene un historial de cumplimiento satisfactorio.

(4) Tiene un historial satisfactorio de integridad y ética comercial.

(5) Tiene la organización, experiencia, contabilidad y controles operacionales y destrezas técnicas necesarias para cumplir sus obligaciones.

(6) Tiene equipo técnico y facilidades necesarias, o la habilidad de obtener tal equipo y facilidades.

(7) Está de otra forma cualificado y sea elegible para recibir una adjudicación de conformidad con las leyes y reglamentos aplicables.

(8) Cualquier otro requerimiento impuesto por el municipio para considerarlo como "licitador responsable".

Cónsono con lo anterior, el Reglamento 8873, Parte II, Sección 11, dispone sobre los **parámetros para la adjudicación** en las subastas de suministros de servicios no profesionales.

La adjudicación de las subastas de adquisición, se harán a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento y que reúna los siguientes requisitos:

a) **que cumpla con los requisitos y condiciones de los pliegos de especificaciones**;

b) que sea la más baja en precio o que aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación. (Énfasis nuestro).

. . . . . . . .

Finalmente, en aras de una **competencia adecuada**, los ayuntamientos están compelidos a rechazar aquellas ofertas de un licitador cuyo precio es irrazonable o que no cumpla con los requerimientos de la subasta. Reglamento 8873, Cap. VIII, Parte II, Sección 12 (1). En armonía con lo anterior, el Reglamento 8873,

Parte II, Sección 12 (7), provee para que los municipios impartan un **rechazo global** a las propuestas no responsivas. Así reza:

> Se podrán rechazar todas las ofertas recibidas para una subasta en los siguientes casos:
>
> a) **no cumplan con las especificaciones**;
> b) no cumplan con las condiciones;
> c) ofrezcan precios irrazonables;
> d) exista colusión entre todos los licitadores;
> e) no ha dado atención y cumplimiento satisfactorio a contratos que le hayan sido otorgados anteriormente;
> f) el licitador es deudor del municipio o el Estado Libre Asociado de Puerto Rico y no está acogido a un plan de pago;
> g) el licitador ha sido convicto por delitos relacionados a malversación de fondos públicos, conforme la Ley Núm. 458-2000, según enmendada y otras que en lo sucesivo puedan ser aprobadas;
> h) cualquiera otra causa justificada por la Junta. (Énfasis nuestro).

En estos casos, en consonancia con el Artículo 7.012 del Código Municipal, *supra*, la **acción a tomar** es la celebración de una subasta formal, siempre que el importe del contrato exceda de cien mil dólares. En las instancias de sumas inferiores, el reglamento de la junta de subastas del ayuntamiento dispondrá para la solicitud de cotizaciones de al menos tres suplidores.

### III.

En la presente causa, Sonnell alega que la Junta de Subastas incidió al adjudicar la *buena pro* a favor de Truckars, aun cuando el agraciado no fue un licitador responsivo ni cumplió con los requisitos de la subasta. En este aspecto, le asiste la razón al recurrente, según explicaremos en adelante al discutir en conjunto los dos señalamientos de error.

El Municipio de Corozal posee una flota de tres vehículos Chevrolet Express G4500 de 2019 para el transporte colectivo. Las unidades fueron adquiridas mediante una asignación de fondos de la FTA. A través de la subasta formal del título, el ayuntamiento

buscaba contratar los servicios de mantenimiento preventivo y reparación de los tres vehículos de pasajeros. El acuerdo estaría sujeto a una posible extensión de hasta cuatro años. La Junta de Subastas delimitó de manera precisa en 54 acápites del *Pliego y Condiciones* las especificaciones de los servicios a contratar.[9] No obstante, la Junta de Subastas configuró un *Pliego de Licitación* en el que agrupó en tres incisos algunos de los servicios, a saber: los costos mensuales por unidad del mantenimiento preventivo, los costos por mecánica liviana y por mecánica pesada, entre otros, con el fin de que los licitadores consignaran sus precios en los espacios provistos. Debemos apuntar que el *Pliego de Licitación* omite servicios contemplados en el *Pliego y Condiciones*. Entre éstos, podemos mencionar el cotejo del sistema de enfriamiento, instalación de neumáticos y baterías, hojalatería, pintura, rotulación, reemplazo de cristales y lavado de las unidades vehiculares.

Por separado, la Junta de Subasta unió una adenda para el servicio de grúa para remolque. Ambos proponentes sometieron sus respectivas tarifas. Ahora, no surge de la propuesta del agraciado, sin embargo, qué unidad de reemplazo proveerá. Con relación a este requerimiento, el recurrente plantea que se trata de un arrendamiento, por lo que Truckars no ostenta la autorización para ello. Empero, la obligación de suministrar un vehículo de reemplazo, cuyo incumplimiento acarrea una multa de $500.00,[10] no cumple con la definición del contrato de arrendamiento. Como se conoce, el contrato de arrendamiento es aquél mediante el cual "el arrendador se obliga a ceder temporalmente al arrendatario el uso y disfrute de un bien a cambio de un precio cierto". Art. 1331 del Cód. Civil, 31 LPRA sec. 10101. En el negocio jurídico

---

[9] Refiérase al Apéndice del recurso, págs. 4-6.
[10] Apéndice del recurso, pág. 4, acápites 15-16.

propuesto por el Municipio de Corozal, la prestación exigida no está atada al pago de un canon de arrendamiento, sino que se concibe como un servicio adicional que el licitador debe satisfacer, como parte del contrato de mantenimiento y reparación de los vehículos de pasajeros.

A base del *Pliego de Licitación*, éstas fueron las propuestas de cada proponente:

| SONNELL | TRUCKARS | |
|---|---|---|
| $1,1977.00 | $175.00<br><br>**PRECIO NO INCLUYE CAMBIO DE WIPER, REFRIGERANTE, FLUIDOS. ÉSTOS SE FACTURARÁN APARTE DE SER NECESARIO EL CAMBIO DE LOS MISMOS** | **Mantenimiento Preventivo**<br>a. Cambio de Aceite y filtros que sean los recomendados por el fabricante<br>b. Cambios de Filtros de Aire y diésel en aquellos vehículos que aplique<br>c. Rotación de gomas<br>**d. Revisión de líquido de frenos, wiper, presión de gomas, refrigerantes, y suplir de ser necesarios**<br>e. Cotejo de sistema de Frenos (bandas, pads)<br>f. Cotejo del sistema de rampa de impedidos |
| a. $100.00<br>b. 20%<br>c. $175.00<br>d. $100.00 | a. $60.00<br>b. 30%<br>c. $20.00<br>d. $60.00 | **Mecánica Liviana**<br>a. Costo por hora de mecánica liviana $ 100.00 hora<br>b. Porciento ganancia en Piezas _____%<br>c. Inspección anual de vehículo $_____ por vehículo<br>d. Costo de Instalación y Reparación aire acondicionado $_____ por hora |
| a. $130.00<br>b. 20%<br>c. $175.00<br>d. $130.00 | a. $70.00<br>b. 30%<br>c. $40.00<br>d. $70.00 | **Mecánica Pesada**<br>(vehículos diésel, guaguas escolares, camiones, etc.)<br>a. Costo por hora de mecánica [pesada] $_____ hora<br>b. Porciento ganancia en Piezas _____%<br>c. Inspección anual de vehículo $_____ por vehículo<br>d. Costo de Instalación y Reparación aire acondicionado $_____ por hora |
| $350.00 | $75.00 por enganche $10.00 por cada milla | **Grúa** |

Tal como se desprende de las propuestas esbozadas, en la oferta de mantenimiento preventivo, Truckars modificó el *Pliego de Licitación* y excluyó del precio de $175.00 mensual por unidad los servicios de cambio de limpiaparabrisas, refrigerantes y fluidos. Según el licitador agraciado, de estos servicios ser necesarios, se

facturarían por separado. Cabe señalar que estas especificaciones sobre el mantenimiento preventivo surgen del *Pliego y Condiciones* de la subasta formal, al que citamos e impartimos énfasis:[11]

. . . . . . . .

3. El **mantenimiento preventivo** se hará conforme al Manual de Mantenimiento del Manufacturero de los vehículos. La frecuencia se debe considerar de acuerdo con el millaje y horas de motor, se debe contemplar el costo para servicios cada mes. Entre las labores a realizar están las siguientes y todas aquellas otras que son requeridas por el Manual:

a) Cambio de Aceite y filtros que sean los recomendados por el fabricante
b) Cambios de Filtros de Aire y diésel en aquellos vehículos que aplique
c) Rotación de gomas
d) **Revisión de líquido de frenos, *wiper*, presión de gomas, refrigerantes, y suplir de ser necesarios**
e) Cotejo de sistema de Frenos (bandas, *pads*)
f) Cotejo del sistema de enfriamiento (Servicio si necesita)
g) Cotejo del sistema de rampa de impedidos

Somos del criterio que la atribución del agraciado de excluir servicios requeridos, tanto en el *Pliego y Condiciones* como en el *Pliego de Licitación*, lo inhabilita como proponente. La mera exclusión de los fluidos y los refrigerantes, cuyo producto y labor debía cotizar, inciden en la contratación pública. Al modificar unilateralmente las condiciones, la referida partida de mantenimiento preventivo queda al arbitrio del contratista, en perjuicio de los haberes del ayuntamiento. Nótese que no se trata de un servicio incidental, sino continuo, ya que para el uso seguro de estas unidades de pasajeros de 2019 es esencial la revisión de la necesidad o no de suplir el aceite de motor, el refrigerante y los fluidos, tales como el líquido de frenos o el de la transmisión, entre otros.

Ciertamente, la Junta de Subastas abusó de su discreción al concluir irrazonablemente que el agraciado cumplió con las especificaciones de la subasta formal y adjudicar la *buena pro* a

---

[11] Apéndice del recurso, pág. 4, acápite 3.

favor de Truckars. Como se sabe, el precio más bajo es un criterio importante en los procesos de adjudicación de subastas públicas, pero no el único. Por consiguiente, en esta causa, debe ceder nuestra deferencia judicial a las determinaciones administrativas.

Además, es notable que de las propuestas de ninguno de los licitadores se desprenden los costos propuestos por cuatro años, en caso de que el Municipio de Corozal hubiera considerado extender el acuerdo hasta cuatro años. Asimismo, a diferencia de Sonnell, Truckars omitió incluir la política de drogas y alcohol, así como varias de las certificaciones gubernamentales solicitadas, según se puede constatar en los autos.[12]

De otro lado, ambos licitadores incumplieron al someter estados financieros al 31 de diciembre de 2022, cuando el *Pliego y Condiciones* delimitó la fecha del 31 de diciembre de 2023.[13] En cuanto a este asunto, Truckars refleja un patrimonio neto negativo, lo que podría comprometer su solvencia financiera y la capacidad para cumplir con las obligaciones con el ayuntamiento. Según esbozamos, quien preste los servicios al aparato público debe contar con recursos financieros adecuados para cumplir su obligación.

En fin, nos parece que la liviandad con la que la Junta de Subastas asumió la anotación superpuesta de Truckars y otros patentes incumplimientos del agraciado denota un gran desconocimiento de los procesos de subasta formal, lo que, a su vez, compromete la protección de los fondos públicos. Así, pues, luego de un ponderado examen del expediente, colegimos que procedía la descalificación de Truckars.

Claro está, la descalificación de Truckars no es razón suficiente para adjudicar la subasta a favor de la parte recurrente.

---

[12] Apéndice del recurso, págs. 6, acápite 51; 8, acápites 17-19, 24.
[13] Apéndice del recurso, pág. 5, acápite 26. Del expediente no surge una enmienda que permita a los licitadores someter estados financieros distintos a lo consignado en el *Pliego y Condiciones*.

Primero, si bien Sonnell cumplió con la mayoría de los requerimientos del pliego de subasta, no satisfizo todos los requisitos. Del mismo modo, opinamos que la Junta de Subastas tiene razón al rechazar los precios propuestos por el recurrente, al considerarlos elevados o irrazonables. A esos efectos, tal como regula el Reglamento 8873, a la Junta de Subastas le correspondía rechazar ambas ofertas, ya que ninguno de los proponentes satisfizo los parámetros del pliego de la subasta formal. En suma, Truckars no cumplió con todas las especificaciones y Sonnell ofreció precios irrazonables. Por tanto, la Junta de Subastas del Municipio de Corozal deberá celebrar, de así interesarlo, una nueva subasta para los servicios de mantenimiento y reparación de la flota vehicular adquirida con fondos de FTA del ayuntamiento.

**IV.**

Por los fundamentos expuestos, revocamos la adjudicación de la Subasta Núm. 005 2023-2024 notificada por la Junta de Subastas del Municipio de Corozal el 3 de abril de 2024. A su vez, dejamos sin efecto la paralización decretada.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones