ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EILEEN COLLINS Y MICHAEL SCOTT COLLINS<br><br>Recurrente<br><br>v.<br><br>ISABELA ESTATES, LLLC<br><br>Recurrido | KLRA202400661 | *Revisión Judicial* procedente del Departamento de Recursos Naturales y Ambientales<br><br>Caso Núm.: 24-155-AG<br><br>Sobre: Impugnación de Deslinde O-AG-CER02-SJ-00774-11052022 |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de febrero de 2025.

Comparece la parte recurrente, conformada por la señora Eileen Collins y el señor Michael Scott Collins. Solicitan que revoquemos la *Resolución* emitida el 27 de agosto de 2024, notificada el 29 de agosto de 2024, por el Departamento de Recursos Naturales y Ambientales (DRNA o Agencia). En el referido pronunciamiento, la Agencia declaró no ha lugar la impugnación al deslinde O-AG-CER02-SJ-00774-11052022 instada el 23 de julio de 2024 por los recurrentes.

Por los fundamentos que expondremos, confirmamos la determinación administrativa.

**I.**

Surge de los autos que, el 11 de mayo de 2022, la parte recurrida, Isabela Estates, LLC, presentó ante el DRNA una *Solicitud de consulta para certificación de deslinde* (*Solicitud*) para la demarcación de la zona marítimo terrestre de la finca registral 4,951 del Barrio Bajuras en el Municipio de Isabela.[1] Subsecuentemente,

---

[1] Apéndice del Recurso, pág. 1.

Número Identificador

SEN2025_____

la parte recurrida instaló un rótulo en el predio y publicó un aviso en un periódico de circulación general el 15 de septiembre de 2022.[2] La parte recurrida notificó la *Solicitud* a los colindantes por correo certificado con acuse de recibo el 27 de septiembre de 2022.[3] Particularmente, la notificación dirigida a la parte recurrente se envió a la siguiente dirección:

362 Bo. Bajuras
Isabela, PR 000662[4]

Por igual, la Agencia hizo un anuncio público sobre la *Solicitud* de la parte recurrida en la página web del DRNA.[5] Allí, se apercibió al público interesado en comentar o intervenir en el proceso que debería presentar un escrito en el que conste detalladamente los hechos en que se fundan los comentarios o el derecho para su intervención.

El 4 de octubre de 2022, ambos recurrentes remitieron sendas comunicaciones al DRNA en las que solicitaron la celebración de una vista pública para revisar la documentación y la información utilizada en la determinación de la zona marítimo terrestre.[6] Se desprende de ambas comunicaciones una dirección postal de los recurrentes, a saber:

PO Box 605
Remsenburg, NY 11960.

De otro lado, el 1 de marzo de 2023, la parte recurrente remitió otra carta al DRNA.[7] En la misiva, se expresó que Michael y Eileen han sido colindantes de la propiedad de la parte recurrida por 17 años. Se expuso que el predio adyacente se había inundado en numerosas ocasiones. Por lo tanto, la parte recurrente favoreció los

---

[2] Apéndice del Recurso, págs. 2-4.
[3] Apéndice del Recurso, págs. 5-8.
[4] Apéndice del Recurso, pág. 6. Cabe señalar que el colindante Luis Martínez Mercado fue notificado a la misma dirección; véase, Apéndice del Recurso, págs. 6 y 8. Por su parte, se cursó la misiva a William Beck Collin (*sic*) al PO Box 60401 PMB 49 San Antonio PR 00690.
[5] Apéndice del Recurso, pág. 9.
[6] Refiérase a *Moción sobre Apéndice*, de 5 de diciembre de 2024, anejos a y b; y al Apéndice del Recurso, pág. 121.
[7] Apéndice del Recurso, pág. 106.

esfuerzos de Lourdes Irizarry, así como que no se otorgaran permisos para proyectos que no se ajustaran a las leyes vigentes.

Tras varios trámites procesales, el DRNA celebró una vista pública el 6 de marzo de 2023.[8] La citación se notificó a:[9]

Luis Martínez Delgado (*sic*)
362 Bo. Bajuras
Isabela PR 00662

William Beck Collins (*sic*)
PO Box 60401 PMB 49
San Antonio PR 00690

A los anteriores destinatarios e idénticas direcciones se cursó la *Orden y Notificación del 21 de junio de 2023*, emitida por la Agencia.[10] Ésta reza, en parte, que "[u]na vez la División de Agrimensura del DRNA prepare el borrador de deslinde y la señora Secretaria emita su decisión sobre certificar o no el deslinde, es mandatorio hacer la correspondiente notificación y publicación. Es entonces que se activan para las personas interesadas los términos correspondientes para revisar administrativamente la determinación".

No surge del expediente que alguna de las previas comunicaciones haya sido dirigida a la parte recurrente.

Finalmente, el 7 de agosto de 2023, el DRNA emitió la *Certificación* del deslinde solicitado y el día 10 de ese mismo mes y año, la Agencia publicó la determinación en su página web.[11] El 10 de agosto de 2023, la parte recurrida notificó a los colindantes la *Certificación.*[12] Al igual que al vecino Luis Martínez Mercado, la parte recurrente fue notificada a esta dirección:

362 Bo. Bajuras
Isabela, PR 000662

---

[8] Apéndice del Recurso, págs. 10-12; 13-49.
[9] Véase, nota al calce 4 en esta *Sentencia.*
[10] Apéndice del Recurso, págs. 50-52.
[11] Apéndice del Recurso, pág. 53.
[12] Refiérase a *Moción sobre Apéndice*, de 5 de diciembre de 2024, anejo c; y al Apéndice del Recurso, pág. 121.

Así las cosas, el 23 de julio de 2024, Eileen Collins, Michael Scott Collins, junto a Colin William Beck, comparecieron mediante un escrito intitulado *Impugnación de Deslinde de Zona Marítimo Terrestre*.[13] En éste, la parte recurrente suministró la siguiente dirección:

PO Box 707
Speonk NY 11972

Por su parte, Colin William Beck informó que su dirección era PO Box 60401 PMB 49 San Antonio, PR 00690.

En síntesis, indicaron que la propiedad del recurrido colinda al norte con una duna, que forma parte de la zona marítimo terrestre. Por la importancia de su protección, en su día, se solicitó la celebración de una vista pública. Añadieron que la parte recurrida incumplió con los requisitos de notificación. En específico, que la *Solicitud* sólo fue recibida por Colin William Beck, no por los recurrentes, ya que la dirección 362 Bo. Bajuras Isabela PR 00662 no era su dirección postal; mientras que ninguno de ellos recibió la *Certificación*, privándolos de su oportunidad de impugnar el procedimiento del deslinde. Por entender que la notificación incumplió con la Sección 3.1 (G) del Reglamento Núm. 4860, *infra*, la parte recurrente reconoció que no se activaba el término para impugnar el deslinde y solicitó que éste se declarara nulo.

El 29 de agosto de 2023, el DRNA notificó la *Resolución* recurrida, mediante la cual se denegó la impugnación del deslinde.[14] En esencia, la Agencia acogió la recomendación de la Oficial Examinadora, Myrna Abreu del Valle, quien sostuvo que la parte recurrente no indicó error alguno en el deslinde. Además, la funcionaria argumentó que la parte recurrente conocía de la *Solicitud* del deslinde; e incluso que ésta solicitó la celebración de la

---

[13] Apéndice del Recurso, págs. 54-64.
[14] Apéndice del Recurso, págs. 67-69; 70-74.

vista pública. Expuso que la parte recurrente fue notificada a la dirección de la propiedad colindante con la finca de la parte recurrida y que el deslinde no menoscabó los derechos sobre su propiedad.

En desacuerdo, la parte recurrente presentó una *Moción de Reconsideración y Solicitud de Vista* el 18 de septiembre de 2024.[15] Insistió en que no se recibió la *Certificación* del deslinde y que el mero envío no subsanaba el incumplimiento reglamentario. La Agencia realizó los trámites de rigor,[16] en los que comparecieron la parte recurrida[17] y la parte recurrente con sus respectivas posturas.[18]

En resumen, la parte recurrida peticionó la desestimación de la impugnación por tardía y por haber obrado con incuria. Del mismo modo, rechazó que Colin William Beck no recibiera la notificación de la *Certificación* y mostró evidencia de la firma correspondiente en el acuse de recibo. En cuanto a la parte recurrente, planteó que las notificaciones se remitieron a la última dirección conocida, según constaba en el Centro de Recaudación de Ingresos Municipales (CRIM), por lo que le era imputable a los recurrentes la falta de corrección. El sobre en cuestión fue devuelto por el correo.[19] Adujo también que la parte recurrente conocía del trámite del deslinde, que ofreció un donativo para los gastos legales[20] y que participó de la vista pública celebrada.

La parte recurrente reiteró la falta de notificación, ya que el sobre fue devuelto. A través de una factura de 2022,[21] impugnó que

---

[15] Apéndice del Recurso, págs. 75-87.
[16] Apéndice del Recurso, págs. 88-89.
[17] Véase, *Moción en Oposición a Impugnación de Deslinde y Solicitud de Desestimación*, *Réplica a "Oposición de Desestimación"* y *Moción Reiterando Solicitud de Desestimación*, Apéndice del Recurso, págs. 90-95; 100-107 y 114-115.
[18] Véase, *Oposición a Solicitud de Desestimación* y *Dúplica a Réplica*, Apéndice del Recurso, págs. 96-99 y 108-111.
[19] Apéndice del Recurso, pág. 95.
[20] Véase, Apéndice del Recurso, pág. 107.
[21] Apéndice del Recurso, pág. 99.

la dirección utilizada constara en el CRIM, ya que el cobro fue dirigido a un apartado postal en Nueva York. Esto, a su vez, fue refutado por la parte recurrida, mediante información del catastro digital.[22] Entonces, la parte recurrente arguyó que el CRIM cambió la dirección sin su autorización y por un error interno.

Asimismo, el DRNA, como representante del interés público, compareció mediante una *Moción Informativa y Aclaratoria*,[23] en la que expuso:

> Informamos que de una búsqueda en el sistema de Catastro Digital del CRIM, la dirección registrada bajo el número de parcela de procedencia 002-000-003-34, cuyo dueño es Michael Schott (*sic*) Collins, es la siguiente: 362 Bo. Bajuras, PR. 00662, (Anejo 1). Esta dirección del CRIM es la que utiliza el agrimensor tanto de oficio como de entidad privada para notificar al colindante que se ha presentado un deslinde de la zona marítimo terrestre/bienes de dominio público marítimo terrestre y es la dirección que se utiliza para la certificación del deslinde por correo certificado con acuse de recibo con los respectivos apercibimientos.

Así, pues, la Agencia declaró no ha lugar la petición de reconsideración, lo que notificó el 31 de octubre de 2024.[24]

Inconforme aún, la parte recurrente instó el recurso de revisión judicial del título y esbozó el siguiente error:

> *Erró el Departamento de Recursos Naturales y Ambientales al validar la notificación sobre certificación del deslinde utilizando una dirección postal distinta a la informada por los recurrentes en el expediente administrativo del caso.*

La parte recurrida presentó su *Alegato en Oposición* el 10 de enero de 2025. Con el beneficio de ambas comparecencias, procedemos a disponer de la controversia de autos.

**II.**

**A.**

El Artículo 4.002 de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, *Ley de la judicatura del Estado Libre Asociado de*

---

[22] Apéndice del Recurso, págs. 103-105.
[23] Apéndice del Recurso, págs. 112-113.
[24] Apéndice del Recurso, págs. 116-118; 119-120.

*Puerto Rico de 2003*, 4 LPRA sec. 24 *et seq.* (Ley Núm. 201-2003), establece en lo atinente que el Tribunal de Apelaciones tendrá jurisdicción para revisar "como cuestión de derecho [...] las decisiones finales de los organismos y agencias administrativas". 4 LPRA sec. 24u; además, Art. 4.006 de la Ley Núm. 201-2003, 4 LPRA sec. 24y.

Por su parte, la Sección 4.5 de la Ley Núm. 38 de 30 de junio de 2017, según enmendada, *"Ley de procedimiento administrativo uniforme del Gobierno de Puerto Rico,* 3 LPRA sec. 9675 (LPAUG), que versa sobre el alcance de la revisión judicial, dispone que este tribunal intermedio sostendrá las determinaciones de hechos de las decisiones de las agencias, si se basan en evidencia sustancial que obra en el expediente administrativo; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho. Mediante la revisión judicial, esta curia debe evaluar que la decisión administrativa encuentre apoyo en la evidencia sustancial que obre en la totalidad del expediente administrativo. El concepto *evidencia sustancial* se ha definido como aquella "prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018), *Hilton Hotels v. Junta Salario Mínimo,* 74 DPR 670, 686 (1953), refrendados en *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 127-128 (2019). El *expediente administrativo*, por su parte, constituye la base exclusiva para la decisión de la agencia en un procedimiento adjudicativo, así como para la revisión judicial ulterior. Sec. 3.18 de la LPAUG, 3 LPRA sec. 9658; *Graciani Rodríguez v. Garaje Isla Verde, supra,* pág. 128. Igualmente, examinamos que el ente gubernamental haya realizado una aplicación o interpretación correcta de las leyes o reglamentos que se le ha encomendado administrar. Finalmente, auscultamos que el

organismo haya actuado dentro de los parámetros de su ley habilitadora, no de forma arbitraria, irrazonable ni haya lesionado derechos constitucionales fundamentales. Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016).

Por lo anterior, **al revisar las determinaciones administrativas finales, los tribunales apelativos estamos compelidos a conceder deferencia, por la experiencia y conocimiento pericial que se presume tienen los organismos ejecutivos para atender y resolver los asuntos que le han sido delegados**. *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde, LLC, supra*, pág. 126; *Rolón Martínez v. Supte. Policía, supra*, pág. 35; *Torres Rivera v. Policía de PR, supra*, pág. 626. Al respecto, el Tribunal Supremo de Puerto Rico ha reiterado que las determinaciones de los organismos administrativos "poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas". *Rolón Martínez v. Supte. Policía, supra*; *Torres Rivera v. Policía de PR, supra*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012); *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002-1003 (2011). Así, pues, el norte al ejercer nuestra facultad revisora es el criterio de razonabilidad. *Super Asphalt v. AFI y otro, supra*, pág. 821; *Graciani Rodriguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Torres Rivera v. Policía de PR, supra*, pág. 626; *Empresas Loyola v. Com. Ciudadanos*, 186 DPR 1033, 1042-1043 (2012). Por lo tanto, intervendremos únicamente cuando el organismo recurrido haya actuado de una manera tan irrazonable que su actuación constituya un abuso de discreción. *Super Asphalt v. AFI y otro, supra*, pág. 821; *Graciani Rodriguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Rolón Martínez v. Supte. Policía, supra*.

En consecuencia, nuestra intervención se justifica y cederá la deferencia que ostentan las agencias en las aplicaciones e interpretaciones de las leyes y los reglamentos que administran,[25] en las siguientes circunstancias: cuando el ente administrativo haya realizado determinaciones carentes de una base racional; cuando la determinación administrativa no esté basada en evidencia sustancial; si la agencia erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; o la actuación administrativa lesionó derechos constitucionales fundamentales. "Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida". *Torres Rivera v. Policía de PR, supra*, pág. 628.

**B.**

La Constitución de Puerto Rico, en su Artículo VI, Sección 19, establece como política pública "… la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad…". LPRA, Tomo 1, ed. 2023, pág. 462. Mediante la Ley Núm. 23 de 20 de junio de 1972, según enmendada, *Ley Orgánica del Departamento de Recursos Naturales y Ambientales* (Ley Núm. 23), 3 LPRA sec. 151 *et seq.*, la Asamblea Legislativa confirió al Departamento de Recursos Naturales y Ambientales (DRNA) la responsabilidad, en la fase operacional, de implantar la política pública antes enunciada. Así, pues, el Secretario del DRNA tendrá como deber, entre otros, "[e]jercer la vigilancia y conservación de las aguas territoriales, los terrenos sumergidos bajo ellas y la zona marítimo-terrestre, conceder franquicias, permisos y licencias de carácter público para

---

[25] Véase, *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).

su uso y aprovechamiento y establecer mediante reglamento los derechos a pagarse por los mismos. A estos efectos estará facultado para ejercer aquellos poderes y facultades que le puedan ser delegadas por cualquier agencia o instrumentalidad del gobierno federal bajo cualquier ley del Congreso de los Estados Unidos". Art. 5 (h) Ley Núm. 23, 3 LPRA sec. 155 (h).

Cónsono con lo anterior, el 30 de diciembre de 1992, el DRNA promulgó el *Reglamento para el aprovechamiento, vigilancia, conservación y administración de las aguas territoriales, los terrenos sumergidos bajo éstas y la zona marítimo terrestre*, Reglamento Núm. 4860, según enmendado, efectivo desde el 29 de enero de 1993. El Artículo 2, inciso 2.33, de la referida reglamentación define el término *deslinde* como la "actividad mediante la cual se determinan los límites entre uno o más inmuebles colindantes con el dominio público marítimo terrestre".[26] A su vez, la *zona marítimo terrestre* es definida en el inciso 2.108 del Reglamento Núm. 4860 como el espacio de las costas "que baña el mar en su flujo y reflujo, en donde son sensibles las mareas y las mayores olas en los temporales, en donde las mareas no son sensibles, e incluye los terrenos ganados al mar, las accesiones y aterramientos que ocasiona el mismo y los márgenes de los ríos hasta el sitio en que sean navegables o se hagan sensibles las mareas".[27]

En lo que atañe a la cuestión planteada en el caso de autos, el Reglamento Núm. 4860, en su Artículo 3, *Deslinde de la zona marítimo terrestre e inventario de aprovechamiento y construcciones*

---

[26] Cabe mencionar que el Artículo 829 del Código Civil de 2020, 31 LPRA sec. 8132, define *deslinde* como "la operación por la cual se fijan los límites materiales de una finca que están confundidos". En nuestro ordenamiento, la acción de deslinde es imprescriptible y sin perjuicio de los derechos adquiridos por usucapión. Arts. 831 y 1205 del Cód. Civil, 31 LPRA secs. 8134 y 9497.

[27] La definición surge de la Sección 1.03 (n) de la Ley Núm. 151 de 28 de junio de 1968, según enmendada, *Ley de Muelles y Puertos de Puerto Rico,* 23 LPRA sec. 2103 (n).

*existentes,* según enmendado por el Reglamento Núm. 7828 de 11 de marzo de 2010, establece las siguientes pautas:

A. **El Departamento, una vez reciba una solicitud de deslinde** o decida incoarla de oficio, **publicará en su Portal de Internet la información sobre la solicitud**, incluyendo el nombre del peticionario, la fecha de la solicitud, si la acción es a petición de parte o de oficio, la dirección y una descripción del predio que se pretende deslindar, el propósito u obra propuesta en el predio, si alguna, el número de expediente y el término para que la ciudadanía presente información o emita comentarios.

B. **En los casos de deslindes realizados a solicitud de parte, el peticionario notificará mediante carta certificada con acuse de recibo a los propietarios colindantes y al Municipio donde está ubicado el predio, sobre el inicio del proceso de deslinde**. Además, deberá colocar a su costo, uno o más rótulos en el predio sujeto al deslinde, en el cual se indicará el área que se pretende deslindar, el propósito del deslinde, cualquier información que ayude a identificar la obra propuesta, si alguna, y un apercibimiento de que la ciudadanía, mediante solicitud debidamente justificada, puede solicitar una Vista Pública en casos revestidos de alto interés público. El peticionario tendrá la obligación de someter evidencia del cumplimiento de lo anteriormente señalado ante el Departamento.

.     .     .     .     .     .     .     .

D. En todo caso, la concesión de Vista Pública estará sujeta a la discreción del Secretario, tomando en consideración la totalidad de las circunstancias del deslinde. **El Departamento determinará la cantidad de rótulos que se coloquen en el predio**, pero tomará en consideración la magnitud de la obra propuesta y la extensión del predio. Los rótulos no se removerán hasta que el Departamento adopte y certifique el deslinde.

E. En los casos de deslindes incoados de oficio, el Departamento, **publicará un edicto por un día**, en un periódico de circulación general en Puerto Rico, en el cual se indicará el área que se pretende deslindar y un apercibimiento a la ciudadanía de su derecho de requerir, mediante solicitud debidamente justificada, una vista pública. La concesión de Vista Pública estará sujeta a la discreción del Secretario.

F. En los casos de deslindes realizados a solicitud de parte, **la parte peticionaria costeará en su totalidad el edicto antes mencionado**. El Departamento preparará el edicto y la parte promovente tendrá la obligación de publicarlo y de someter evidencia de su publicación ante el Departamento.

G. **Una vez el Secretario certifique el deslinde, el peticionario; y en el caso de deslindes incoados de oficio, el Departamento notificará dicho hecho a los propietarios colindantes y al Municipio donde está**

**ubicado el predio. La notificación se hará mediante correo certificado con acuse de recibo y en el portal electrónico del Departamento**, en el cual se indicará el área que se midió, el propósito del deslinde, cualquier otra información que ayude a identificar la obra propuesta, si alguna y el término que tiene la ciudadanía para ofrecer información, emitir comentarios o presentar una acción para cuestionar el deslinde ante el Departamento. (Énfasis nuestro).

. . . . . . . .

El Tribunal Supremo ha expresado que la acción de deslinde pretende individualizar los inmuebles, sin determinar directamente quién es su dueño, por lo que, en esta acción, no se discute la validez ni la eficacia de los títulos, sino que se dirime su interpretación. En virtud de lo anterior, el deslinde "no da ni quita derechos". *Ramírez Quiñones v. Soto Padilla*, 168 DPR 142, 159 (2006). Por consiguiente, la acción de deslinde está disponible a "todos los propietarios cuyas propiedades limítrofes tienen confundidos sus linderos por causas naturales, accidentes fortuitos o actos voluntarios de tercero, debiendo concurrir todos a un solo juicio". *Id.*, pág. 158, que cita a *Arce v. Díaz*, 77 DPR 624, 627–628 (1954).

**III.**

En la presente causa, la parte recurrente alega que el DRNA incidió al descartar la impugnación del deslinde y validar la notificación de la *Certificación* del deslinde realizada por la parte recurrida, aun cuando se utilizó una dirección postal distinta a la informada.

Conforme con los hechos reseñados, la parte recurrida notificó por correo certificado con acuse de recibo a la parte recurrente la *Solicitud* y la *Certificación* de deslinde a la dirección 362 Bo. Bajuras Isabela, PR 000662. Las comunicaciones fueron devueltas. La parte recurrente afirma que, a esa misma dirección, sí fueron recibidas las misivas dirigidas al vecino Luis Martínez Mercado.[28] Plantea, además, que la parte recurrida no realizó

---

[28] Véase, *Recurso de Revisión Administrativa*, pág. 12.

esfuerzos razonables, una vez recibió devueltas las notificaciones reglamentarias.

Si bien en el expediente administrativo constan varias direcciones de los recurrentes, es un hecho incuestionable que las señas postales utilizadas por la parte recurrida surgieron de los registros del CRIM. Al respecto, mediante una comparecencia especial, el DRNA constató que ésa era la dirección que se utilizaba para notificar a los colindantes, tanto por el agrimensor en los casos de deslindes de oficio, como por la parte privada promovente del proceso. Asimismo, aseguró que la dirección del CRIM es la que también se utiliza para la notificación por correo certificado con acuse de recibo de la certificación del deslinde. Este proceder no es ajeno a nuestro ordenamiento.[29]

A lo anterior, sumamos que, en el caso presente, la parte recurrente aceptó que, "por un error interno",[30] el CRIM cambió la dirección sin su autorización. Evidentemente, al tiempo de cursarse las notificaciones de la *Solicitud* y de la *Certificación*, la parte recurrente tampoco había realizado las gestiones necesarias para enmendar dicho error. Por lo tanto, la presunta acción errada del CRIM y la omisión de los recurrentes no son imputables a la parte recurrida. En consecuencia, es forzoso concluir que la notificación fue adecuada, al ser enviada a la parte recurrente a la dirección conocida y registrada en la base de datos oficial del CRIM y haberse

---

[29] A modo de ejemplo, la Sección 2.1.9.8 del *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo y Uso de Terrenos*, Reglamento Núm. 9233 de 2 de diciembre de 2020, que versaba sobre los métodos alternos de notificación de los procedimientos administrativos que regía la referida reglamentación, disponía que "[s]e entenderá como notificación adecuada aquella enviada por el solicitante a la dirección de los colindantes que obran en el CRIM, en cuyo caso, deberá anejar evidencia en el expediente digital de envío por correo certificado". Por otra parte, la Sección 6.4.2.2 (3)(4) del Reglamento Núm. 9233 establecía que la vigencia de los deslindes certificados por el DRNA era de cinco años, a menos que, por causas naturales o alteración humana, se provoque un cambio en la costa, entonces, se podrá requerir un nuevo deslinde antes de concluir el lustro. Aclaramos que la reglamentación, vigente al tiempo de la *Solicitud* de deslinde, fue derogada prospectivamente el 16 de junio de 2023 por el Tribunal Supremo de Puerto Rico. Véase, *Martínez Fernández et al. v. OGPe et al.*, 212 DPR 285 (2023).
[30] Apéndice del Recurso, pág. 108.

realizado a través de los mecanismos reglamentarios mandatorios, en armonía con el Reglamento Núm. 4860, *supra*. Véase, *Román v. OGPe*, 203 DPR 947, 956 (2020).

Nótese también que, tanto en la etapa de la solicitud como de la certificación del deslinde, la Agencia publica los procedimientos en su página web. Por este medio o a través del aviso en el periódico, los interesados pueden tener conocimiento del proceso de deslinde. En el caso del epígrafe, la parte recurrente tuvo conocimiento del procedimiento de deslinde, en el que participó al peticionar la audiencia pública. De igual modo, una vez advino en conocimiento de la *Certificación* del deslinde, interpuso la impugnación que nos ocupa, en la que solicitó la nulidad del proceso.

En torno a lo anterior, llama nuestra atención que la Agencia mostró haber dado curso a la impugnación en sí, a pesar de que fue presentada tardíamente, ya que el término expiró el 8 de septiembre de 2023. Es decir, el DRNA, si bien validó la notificación de la parte recurrida por las razones antes expresadas, no opuso contra la parte recurrente los términos para impugnar el deslinde, según procede en los casos de notificación defectuosa.

Ahora bien, en su escrito, la parte recurrente descansó únicamente en la cuestión de la notificación y no presentó ningún señalamiento de vicio del deslinde certificado. Aunque mencionó las dunas de la zona y su importancia, no aludió a que el deslinde realizado afectara adversamente a dicho recurso natural. Por igual, omitió establecer señalamientos específicos y meritorios acerca de cómo, si de alguna manera, el deslinde certificado incidió sobre su propiedad. Así, pues, el DRNA resolvió razonablemente que la petición de nulidad era improcedente, no sólo al validar la notificación por correo certificado con acuse de recibo a la dirección registrada en el CRIM, sino porque, según expuso, el deslinde

atendió la preocupación de los recurrentes en cuanto a las dunas.[31] Por tanto, debido a que la parte recurrente no presentó argumentos tendentes a demostrar que el deslinde tuviese algún error que afectara los bienes públicos o los propios, su impugnación resultó inmeritoria. Ello así, es irrelevante analizar si la parte recurrida realizó o no esfuerzos razonables al recibir devueltas las notificaciones enviadas, toda vez que, del expediente no surge que los intereses de la parte recurrente sobre su propiedad o las dunas se haya afectado. De todas formas, al igual que el DRNA, reiteramos el trillado axioma de que el deslinde no da ni quita derechos.

A la luz del derecho antes expuesto, colegimos que el DRNA no abusó de su discreción al declarar no ha lugar la impugnación de deslinde incoada. La parte recurrente falló en demostrar que el dictamen recurrido no esté basado en evidencia sustancial; ni que el DRNA erró en la aplicación o interpretación de las leyes o reglamentos que administra; ni que se hayan lesionado derechos constitucionales.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Resolución* impugnada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[31] Véase, Apéndice del Recurso, pág. 72.