ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| V.Z.T.G. representada por CATHERINE GARCÍA<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE EDUCACIÓN<br><br>Recurrido | KLRA202400676 | *Revisión Judicial* procedente del Departamento de Educación<br><br>Querella Núm.: QEE-2324 22 06 01662<br><br>Sobre: Educación Especial |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de marzo de 2025.

Comparece la parte querellante y recurrente, la menor V.Z.T.G., representada por su madre la Sra. Catherine García (señora García). Solicita nuestra intervención para revocar la *Resolución* emitida y notificada el 10 de noviembre de 2024, por el Foro Administrativo de Educación Especial del Departamento de Educación de Puerto Rico (FAEE). En la aludida decisión, el FAEE desestimó la *Querella* interpuesta por V.Z.T.G., contra la parte querellada y recurrida, el Departamento de Educación de Puerto Rico (DEPR). El FAEE fundamentó su decisión en la academicidad del pleito. Ello, luego de haber suscrito una *Resolución Interlocutoria y Orden* en la que concedió los principales remedios solicitados.

Por los fundamentos que expondremos, anticipamos la revocación de la determinación administrativa.

**I.**

El 24 de junio de 2024, V.Z.T.G. presentó una *Querella* contra el DEPR.[1] En esencia, alegó que, el 22 de enero de 2021, se realizó

---

[1] Apéndice, págs. 7-9; 10-13. V.Z.T.G. de 13 años está registrada en el Programa de Educación Especial por un impedimento de autismo. Está matriculada en una institución privada bajo la compra de servicios.

una evaluación ocupacional a la estudiante. De ésta, surgió la recomendación de una evaluación funcional de control ocular por un optómetra conductivista. El asunto se discutió en el Comité de Programación y Ubicación (COMPU) de 4 de noviembre de 2022. En la misma fecha, se realizó la evaluación funcional de control ocular de forma privada.[2] Luego, el 7 de diciembre de 2022, la facilitadora docente le entregó a la señora García el referido previamente autorizado. Posteriormente, la referida evaluación fue discutida y aceptada en todas sus partes por el COMPU celebrado el 8 de diciembre de 2022. En esa ocasión, el DEPR indicó que pagaría las terapias recomendadas, desde la aceptación de la evaluación en el COMPU.

A tales efectos, la recurrente solicitó: (1) el reembolso de la evaluación funcional de control ocular por optómetra conductivista que fue recomendado y aceptado en su totalidad por la parte recurrida; (2) el reembolso de las terapias funcionales de control ocular por optómetra conductivista que también fueron recomendadas y aceptadas por el DEPR; (3) copia del expediente de los años académicos 2021-2022, 2022-2023 y 2023-2024; y (4) el cumplimiento de todas las disposiciones legales vinculantes. Asimismo, la reclamación consignó que no se renunciaba al derecho a solicitar los honorarios de abogado.

El 3 de julio de 2024, el DEPR presentó su *Contestación a Querella*.[3] En síntesis, alegó que IDEA no imponía una obligación de reembolsar una evaluación privada. Aseguró que la petición de reembolso de los costos de la evaluación funcional de control ocular y de las terapias recomendadas era improcedente debido a que eran de carácter médico.

---

[2] La señora García sufragó $300.00 por la evaluación y $150.00 por terapias. Apéndice, pág. 11, acápite 14.
[3] Apéndice, págs. 14-17.

Por igual, el 14 de agosto de 2024, el DEPR presentó una *Moción en Solicitud de Desestimación*, en la cual insistió en la improcedencia del reembolso solicitado.[4] Apuntó que la recurrente actuó de manera unilateral. En respuesta, V.Z.T.G. interpuso el 27 de agosto de 2024 su *Oposición a Desestimación*.[5] Reiteró sus previas alegaciones y rechazó haber actuado unilateralmente.

El 25 de septiembre de 2024, el FAEE dictó una *Resolución Interlocutoria y Orden*.[6] Realizó las siguientes determinaciones de hechos:

> 1. El 22 de enero de 2021 se hizo evaluación ocupacional a la Querellante.
>
> 2. El 4 de noviembre de 2022 se discutió la evaluación ocupacional y **se recomendó evaluación funcional de control ocular por optómetra conductivista**.
>
> 3. El 4 de noviembre [de 2022] la estudiante culminó un proceso de evaluación en el área funcional de control ocular de forma privada.
>
> 4. [El] 7 de diciembre de 2022, se entregó el referido a la madre, que había sido autorizado desde el 4 de noviembre de 2022.
>
> 5. [El] 8 de diciembre de 2022, en reunión de COMPU, **se aceptó evaluación de control ocular que se hizo de forma privada, para la que se entregó referido el 7 de diciembre de 2022**. (Énfasis en el original).

En su pronunciamiento interlocutorio esbozó las siguientes conclusiones de derecho:

> No existe duda alguna que hubo una recomendación para que a la menor se le realizara una evaluación de control ocular, la cual en efecto se hizo, y se rindió un informe el 4 de noviembre de 2022, **igual fecha en que se recomendó dicha evaluación**.
>
> **Rendido el informe**, el mismo **fue evaluado y aceptado en reunión de COMPU** del **8 de diciembre de 2022**, y dicha evaluación fue utilizada para realizar recomendaciones subsiguientes, la agencia no hizo objeción alguna respecto al informe rendido. La Agencia ahora no puede negar el reembolso del costo, luego que aceptó y utilizó dicho informe. No podemos pasar por alto que desde que se hizo la evaluación ocupacional al momento que se hizo la recomendación pasó un tiempo considerable.

---

[4] Apéndice, págs. 21-29.
[5] Apéndice, págs. 33-39.
[6] Apéndice, págs. 40-48.

La misma Querellada reconoce que en el COMPU no hubo controversia sobre la necesidad de la evaluación funcional de control ocular por optómetra conductivista recomendada en la evaluación ocupacional, ya que tal necesidad fue reconocida.

Por otro lado, la parte Querellada no puede alegar que la Ley IDEA no provee para realizar reembolso por una evaluación privada de **carácter médico**, en efecto las evaluaciones que se realizan en cierto modo son de carácter médico especializado como en este caso, es un especialista facultado quien hace una recomendación médica que en unión a las recomendaciones de otros especialistas, ayudan a que la Agencia las evalúe y tomando en consideración dichas recomendaciones provea una localización y ubicación de forma adecuada para el menor. (Énfasis en el original).

A la luz de lo anterior, el FAEE declaró No Ha Lugar la petición desestimatoria. En consecuencia, el FAEE concedió los primeros dos remedios solicitados en la *Querella*. Esto es, ordenó al DEPR a pagar, en un término de treinta días, el reembolso por el costo de la evaluación funcional de control ocular realizada de forma privada, así como el costo de las terapias funcionales de control ocular por optómetra conductivista que fueron recomendadas y aceptadas en su totalidad el 8 de diciembre de 2022. Claro está, el reembolso quedó sujeto a la presentación de los documentos requeridos, al tenor de lo dispuesto en la Carta Circular 09-2014-2015 sobre *Política Pública para el Reembolso de Gastos Educativos y Relacionados cuando la Agencia no ha podido ofrecer una Educación Pública, Gratuita y Apropiada, según requerido por IDEA.*

Debemos resaltar que la *Resolución Interlocutoria y Orden* incluyó el siguiente apercibimiento:

**ADVERTENCIAS LEGALES**

Se les apercibe a las partes que esta RESOLUCIÓN PARCIAL no puede ser objeto de revisión judicial hasta tanto se culmine con el procedimiento administrativo que adjudique todas las controversias pendientes y se emita la Resolución Final. La presente disposición interlocutoria podría ser objeto de error en un recurso de revisión ante el Tribunal una vez este Foro Administrativo resuelva la totalidad de las controversias presentadas en la Querella.

Así las cosas, el 20 de octubre de 2024, V.Z.T.G. presentó un escrito intitulado *Moción Informando Incumplimiento con Orden por la Querellante y Solicitud Orden dirigida a Funcionario para Vista de Seguimiento.*[7] Expuso varios contratiempos y adujo que el DEPR evadía los términos para pagar el reembolso concedido. Ante ello, solicitó al FAEE que ordenara a cierta especialista en investigación docente, a canalizar la asistencia que requería la señora García; o en la alternativa, que la citara a la vista de seguimiento pautada para el 31 de octubre de 2024.

El 24 de octubre de 2024, el FAEE emitió una *Orden Urgentísima,*[8] en la cual ordenó a la funcionaria del DEPR, como encargada de dar seguimiento a las resoluciones, a que en el plazo expedito de cuarenta y ocho horas se comunicara con la recurrente o su abogada para proveerle la asistencia necesaria. Luego, el DEPR pretendió que el FAEE dejara sin efecto el mandato.[9] La recurrente instó oposición.[10] El FAEE dictó una *Orden Urgente* el 27 de octubre de 2024 y declaró No Ha Lugar la solicitud del DEPR.[11]

Surge del expediente ante nos que, el 31 de octubre de 2024, se celebró una vista de seguimiento. No contamos con una transcripción del procedimiento, pero del dictamen recurrido se desprende la indicación de que todos los documentos habían sido sometidos y que la división o unidad de reembolsos era el ente responsable de cumplir con lo dispuesto en la *Resolución Interlocutoria y Orden.*

Entonces, el 10 de noviembre de 2024, el FAEE emitió la *Resolución* impugnada.[12] En ésta, resolvió desestimar la *Querella* por haberse tornado académica. Insatisfecha, el 9 de diciembre de

---

[7] Apéndice, págs. 51-52.
[8] Apéndice, págs. 53-56.
[9] Apéndice, págs. 57-59.
[10] Apéndice, págs. 60-64.
[11] Apéndice, págs. 65-67.
[12] Apéndice, págs. 1-6.

2024, V.Z.T.G. presentó el recurso de revisión judicial que nos ocupa y señaló el siguiente error:

> **PRIMER ERROR:** Desestimar una *Querella* que tenía méritos habiendo sido el foro administrativo quien señaló una fecha para vista posterior a una *Resolución Interlocutoria y Orden* que no cumplía con las disposiciones del Reglamento 9168, *supra*; sancionar a la Querellante desestimando la *Querella* por academicidad cuando al 31 de octubre de 2024 habían [*sic*] controversias que impidieron el cumplimiento de la *Resolución Interlocutoria y Orden* del 25 de septiembre de 2024 y donde el foro administrativo tomó conocimiento y resolvió mediante [ó]rdenes adicionales.

El 6 de marzo de 2025, el DEPR presentó un *Escrito de Cumplimiento de Resolución*. Con el beneficio de ambas comparecencias, resolvemos.

## II.

### A.

El Congreso de los Estados Unidos aprobó la *Ley Federal de Educación Especial*, conocida como *Individuals with Disabilities Education Act*, 20 USCA sec. 1401 *et seq.* (IDEA). Este esquema legal tiene el propósito de asegurar que todos los menores con necesidades especiales reciban educación pública, gratuita y apropiada (FAPE, por sus siglas en inglés), en atención a las necesidades particulares de cada estudiante, y proteger los derechos de éstos y de sus respectivos padres o tutores. El estatuto dispone que los estados y territorios que reciben fondos federales tienen que promover programas de educación especial pública, gratuita y apropiada, diseñados para atender las necesidades especiales y específicas de cada menor. 20 USCA sec. 1415(a).

Cónsono con la legislación federal en esta materia y en observancia a nuestro precepto constitucional,[13] la Asamblea Legislativa aprobó la Ley Núm. 51 de 7 de junio de 1996, *Ley de*

---

[13] En nuestro ordenamiento jurídico, la educación goza de garantías de entronque constitucional. La Constitución de Puerto Rico dispone que "[t]oda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del [ser humano] y de las libertades fundamentales". Art. II, Sec. 5, Const. ELA, LPRA, Tomo 1, ed. 2023, pág. 300.

*Servicios Educativos Integrales para Personas con Impedimentos*, según enmendada, 18 LPRA sec. 1351 *et seq.* (Ley 51). El estatuto también propende a garantizar la educación pública, gratuita y apropiada a los estudiantes con necesidades especiales que asistan a las escuelas públicas del País.

**IDEA y la Ley 51 legitiman a los padres o encargados insatisfechos con los servicios educativos ofrecidos para que presenten una querella sobre cualquier asunto relacionado con la identificación, evaluación o ubicación educativa del menor, o la provisión de una educación pública, gratuita y apropiada**. 20 USCA sec. 1415(b)(6). En el caso de que la persona con impedimentos no esté recibiendo una educación apropiada, el estatuto provee para que sus tutores puedan solicitar una vista administrativa ante un juzgador imparcial. *Orraca López v. ELA,* 192 DPR 31, 42 (2014); 20 USCA sec. 1415(f); Art. 4(B)(2)(d) de la Ley 51, 18 LPRA sec. 1353(B)(2)(d). El foro administrativo compelido debe determinar si al menor se le ha negado ese derecho; y dicha decisión es revisable ante los tribunales. *Orraca López v. ELA, supra*; 20 USCA sec. 1415(f)(g).

En lo que atañe a las controversias de autos, por virtud de IDEA, la Ley 51, así como el ordenamiento de derecho administrativo, se promulgó el *Reglamento del Procedimiento para la Resolución de Querellas Administrativas de Educación Especial y sobre la Otorgación de Honorarios de Abogados*, Reglamento 9168 de 26 febrero de 2020. El propósito fundamental de esta reglamentación es establecer los procedimientos que se implementarán en la adjudicación de las querellas administrativas de educación especial referentes a las controversias que se suscitan en ese escenario. Además, establece el procedimiento a seguir por los jueces administrativos al otorgar los honorarios de abogados a la parte prevaleciente en la adjudicación de las querellas.

En lo atinente a las controversias de autos, el Artículo 10, *Extensión de término controversias incoadas,* del Reglamento 9168 dispone:

.    .    .    .    .    .    .    .

**3. Sobre procedimientos posteriores a la emisión de la resolución final**

a. Según se establece en 20 U.S.C. 1415(i)(1)(A) y el 34 CFR 300.514(a) **la resolución que resuelve todas las controversias pendientes y ordena el cierre y archivo de la querella es final**, por lo que no procede una solicitud de reconsideración ante el foro administrativo.

.    .    .    .    .    .    .    .

c. Cualquier **parte perjudicada por la Resolución Final tiene el derecho de acudir en revisión administrativa** al Tribunal de Apelaciones del Gobierno de Puerto Rico dentro del término de treinta (30) días contados a partir del archivo de la querella, según dispuesto en la sección 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 30 de junio de 2017 y 20 U.S.C. 1415(i)(2)(b). (Énfasis nuestro).

.    .    .    .    .    .    .    .

De otro lado, el Artículo 11, *Honorarios de abogados a la parte prevaleciente*, Reglamento 9168 establece lo siguiente:

Unos de los **derechos fundamentales que otorga la Ley IDEA** en estos asuntos administrativos de radicación de Querellas es la **otorgación de honorarios de abogados para la parte prevaleciente**. (20 U.S.C. 1415 (1)(3)(B)).

**1. Parte prevaleciente**

a. Sólo la parte clasificada como parte prevaleciente tiene el derecho a recobrar los honorarios de abogados.

b. **Se considerará como parte prevaleciente aquella parte que, a través de su representante legal, obtiene un remedio que altera la relación legal entre las partes modificando la conducta de los demandados en una forma que directamente beneficia al Querellante**. Basta con prevalecer en algún aspecto sustancial de la querella y no necesariamente en la totalidad de la reclamación para considerarse parte prevaleciente. Puede considerarse parte prevaleciente aun cuando el remedio obtenido no es idéntico al solicitado en la reclamación, pero que provee un remedio típico general igual.

c. El requisito fundamental para ser una "parte prevaleciente" es que además de que el remedio

obtenido altere la relación legal entre las partes debe fomentar y promover los propósitos de la ley IDEA. **El remedio obtenido de los reclamados debe ser ejecutable y obligado a ser cumplido por razón de una orden** o por haber llegado a la obtención del remedio por acuerdo o consentimiento. (Énfasis nuestro).

### B.

El Artículo 4.002 de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 24 *et seq.*, establece en lo pertinente que el Tribunal de Apelaciones tendrá jurisdicción para revisar "como cuestión de derecho [...] las **decisiones finales** de los organismos y agencias administrativas". (Énfasis nuestro). 4 LPRA sec. 24u; además, Art. 4.006 de la Ley Núm. 201-2003, 4 LPRA sec. 24y. Por igual, la Regla 56 del Reglamento del Tribunal de Apelaciones establece que son objeto de revisión judicial "las providencias finales dictadas por organismos o agencias administrativas o por sus funcionarios o funcionarias, ya sea en su función adjudicativa o cuasi legislativa, conforme lo dispuesto en ley". 4 LPRA Ap. XXII-B, R. 56.

Por su parte, la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601 *et seq.*, define una orden o resolución como "cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas...". Sec. 1.3 LPAUG, 3 LPRA sec. 9603(g). Es decir, **"una orden o resolución final es aquella que culmina el procedimiento administrativo, tiene efectos sustanciales sobre las partes y resuelve todas las controversias ante la agencia; les pone fin, sin dejar pendiente una para ser decidida en el futuro"**. (Énfasis nuestro). *Comisionado Seguros v. Universal*, 167 DPR 21, 29 (2006). Nuestro Tribunal Supremo ha opinado que "una orden o

resolución final tiene las características de una sentencia en un procedimiento judicial, porque resuelve finalmente la cuestión litigiosa y permite su apelación o solicitarse su revisión". *Id.* En fin, una orden o resolución final de una agencia administrativa dispone del caso respecto a todas las controversias y tiene resultados adjudicativos y dispositivos sobre las partes. *Id.*, págs. 29-30.

En armonía, la Sección 4.2 de la LPAUG, 3 LPRA sec. 9672, delimita el alcance de la revisión judicial de las decisiones administrativas y dispone que la revisión administrativa ante el Tribunal de Apelaciones se hará respecto a las órdenes o resoluciones finales, luego de que el recurrente haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente. Con ello, la Asamblea Legislativa limitó la revisión judicial exclusivamente a las órdenes finales de las agencias. *Comisionado Seguros v. Universal, supra,* pág. 28. Cónsono con lo anterior, la Sección 3.14 de la LPAUG, 3 LPRA sec. 9654, mandata que la orden o resolución incluya y exponga determinaciones de hecho, a menos que se hayan renunciado, conclusiones de derecho que fundamenten la adjudicación y la disponibilidad del recurso de reconsideración o revisión.

De otro lado, las determinaciones administrativas finales de los foros del ejecutivo suelen ostentar una presunción de legalidad y corrección, por la experiencia y conocimiento pericial que se presume tienen estos organismos para atender y resolver los asuntos que le han sido delegados. *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018). Nuestro norte al ejercer nuestra facultad revisora es el criterio de razonabilidad. *Super Asphalt v. AFI y otro, supra,* pág. 821; *Graciani Rodríguez v. Garage Isla Verde, LLC, supra,* pág. 127.

Por lo tanto, intervendremos cuando el organismo recurrido haya actuado de manera irrazonable y su actuación constituya un abuso de discreción. *Super Asphalt v. AFI y otro, supra,* pág. 821; *Graciani Rodríguez v. Garage Isla Verde, LLC, supra,* pág. 127; *Rolón Martínez v. Supte. Policía, supra*, pág. 35. Así, pues, nuestra intervención se justifica y cederá la deferencia en las siguientes circunstancias: cuando el ente administrativo haya realizado determinaciones carentes de una base racional; cuando la determinación administrativa no esté basada en evidencia sustancial; si la agencia erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; o la actuación administrativa lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR,* 196 DPR 606, 627-628 (2016).

### c.

Finalmente, como se conoce, la jurisdicción de los tribunales, así como la de los foros adjudicativos administrativos, queda determinada por la aplicación de diversas doctrinas que le dan vida al llamado principio de justiciabilidad. Una de esas doctrinas es la de academicidad que, como corolario del principio de justiciabilidad, "nace del elemental principio de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen interés real en obtener un remedio que haya de afectar sus relaciones jurídicas". *E.L.A. v. Aguayo,* 80 DPR 552, 558–559 (1958). Un caso académico es aquél que pretende obtener una determinación final en torno a una controversia inexistente, por lo que el dictamen que se emita en su día no tendrá efectos prácticos. *Id.,* pág. 584. Por lo tanto, el ente adjudicativo debe abstenerse de resolver los méritos de la controversia que ha dejado de estar viva y presente. Véanse, *Lozada Sánchez et al. v. JCA,* 184 DPR 898, 913 (2012); *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 931 (2011); *E.L.A. v. Aguayo, supra,* pág. 584.

A *contrario sensu*, por excepción, un caso no es académico cuando: "(1) se plantea ante el foro judicial una cuestión recurrente o susceptible de volver a ocurrir y que tienda a evadir la revisión judicial; (2) cuando la situación de hechos ha sido modificada por el demandado, pero el cambio no aparenta ser permanente, y (3) **cuando se tornan académicos aspectos de la controversia, pero subsisten consecuencias colaterales vigentes**". (Citas omitidas y énfasis nuestro). *Bhatia Gautier v. Gobernador*, 199 DPR 59, 73–74 (2017).

**III.**

En la causa presente, V.Z.T.G. alega que el FAEE incidió y la sancionó al desestimar su *Querella* al tornarse académica. Aduce que el dictamen incumple con las disposiciones del Reglamento 9168, *supra*, y vulnera derechos reconocidos. Sostiene, además, el incumplimiento del recurrido de la *Resolución Interlocutoria y Orden* del 25 de septiembre de 2024, la cual adolece del alcance de las resoluciones finales.

Luego de un examen de los hechos procesales y el derecho aplicable, somos del criterio que el FAEE erró al desestimar la *Querella* del título por academicidad. En este caso, el FAEE concedió dos de los remedios solicitados en la *Querella*, en particular, los reembolsos. No obstante, la adjudicación a favor de la recurrente se hizo mediante un dictamen interlocutorio parcial, todavía insatisfecho por el DEPR, por lo que aún existen efectos directos y colaterales que han impedido la ejecución del mandato. Tampoco se ha establecido claramente quién está obligado a cumplir la orden de reembolso en el plazo de treinta días. Por ende, es forzoso concluir que la controversia permanece viva.

Además, en el ámbito procesal, la concesión de los remedios mediante un pronunciamiento interlocutorio afectó a ambos contendientes. Primero, se privó al DEPR de su derecho a recurrir

oportunamente una decisión contraria a la postura argüida en la *Contestación a Querella*. Nótese que la *Resolución Interlocutoria y Orden* advirtió que no se podía recurrir hasta la emisión de un dictamen final. Ello, en abstracción de los preceptos jurisdiccionales y a pesar de que la referida determinación dispuso del caso, tuvo efectos sustanciales, adjudicativos y dispositivos sobre ambas partes. Segundo, V.Z.T.G. se vio impedida de exigir el cumplimiento de lo ordenado por no corresponder a un pronunciamiento final que, además, omitió establecer quién debe satisfacer los reembolsos. Esto propende a que el recurrido evada la obligación decretada e imposibilita que la recurrente acuda a los foros concernientes para exigir el cumplimiento del pago de las cuantías, sujeto a la evidencia sometida. Tercero, en la *Resolución* final, que desestimó la Querella por academicidad, el DEPR aparenta ser la parte prevaleciente, en contravención al devenir del caso. Esto inhabilita que V.Z.T.G. pueda ejercitar el derecho fundamental conferido por IDEA de reclamar los honorarios de abogados, reservado únicamente a la parte prevaleciente; así como exigir la ejecución de la determinación y otros remedios en ley.

En suma, la *Resolución Interlocutoria y Orden* obedeció algunas de las pautas de la Sección 3.14 de la LPAUG, *supra*, toda vez que incluyó determinaciones de hecho, conclusiones de derecho y la concesión de remedios en un plazo perentorio. Empero, su carácter interlocutorio impidió la disponibilidad de la revisión judicial oportuna para el recurrido, así como el poder de ejecutarla por parte de la recurrente. En cuanto a la *Resolución* final emitida, somos de la opinión que la determinación administrativa dejó a V.Z.T.G. en un limbo jurídico a pesar de haber primado en su reclamo. En lugar de incorporar determinaciones de hechos, conclusiones de derecho, los remedios concedidos, sus plazos y quiénes están obligados a su cumplimiento, el FAEE desestimó la

reclamación por academicidad, aun cuando la realidad fáctica era opuesta. Por consiguiente, colegimos que procede revocar la *Resolución* de 10 de noviembre de 2024, a los fines que el FAEE dicte una nueva determinación final, que satisfaga los requerimientos de la Sección 3.14 de la LPAUG, *supra*, y el Reglamento 9168, *supra*. La resolución final deberá declarar con lugar la *Querella* QEE-2324 22 06 01662, conceder detalladamente los remedios de los reembolsos del costo de la evaluación funcional de control ocular realizada de forma privada y el reembolso de las terapias funcionales de control ocular por optómetra conductivista, según fueron recomendadas y aceptadas el 8 de diciembre de 2022; incluir el plazo perentorio y la unidad del DEPR obligada a dar cumplimiento. Ambas retribuciones están sujetas a la presentación de la evidencia requerida en la carta Circular 09-2014-2015. Sólo así, procederá el cierre y archivo del caso.

**IV.**

Por los fundamentos expuestos, los cuales hacemos formar parte de este dictamen, revocamos parcialmente la *Resolución* impugnada. Consecuentemente, devolvemos el caso ante la consideración del Foro Administrativo de Educación Especial del Departamento de Educación de Puerto Rico para que emita una resolución final, conforme a lo pautado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones